SCHAUMBURG v. NASH-MISSISSIPPI VALLEY MOTOR CO., INC., ET AL.

(July 1, 1930. Opinion and Decree.)

Guion & Upton, of New Orleans, attorneys for plaintiff, appellant.

John May, of New Orleans, attorney for defendants, appellees.

HIGGINS, J. This is a suit for damages for personal injuries and loss of wages alleged to have been sustained as a result of a Nash automobile striking· the plaintiff at the intersection of Dumaine, North

Peters and Decatur streets in this city on April 12, 1926, about 10:15 p. m. The action is brought against the Nash-Mississippi Valley Motor Company, Inc., on the ground that one of its agents and employees was negligently operating its automobile for its use and benefit within the scope of his duties, and against Charles L. Poche, the driver of the car, on the ground that he was operating the Nash car at an excessive rate of speed at a dangerous street intersection and failed to keep a proper lookout.

The defendant Nash Company interposed the following defenses:

First, that the defendant Poche at the time of the accident was not acting as the agent or employee of the Nash Company for its use and benefit and was not upon the company's business, but upon a venture of his own; second, that Poche was not guilty of negligence, and, in the alternative, third, that the plaintiff was guilty of negligence directly contributing to the accident.

The defendant Poche resisted the plaintiff's claim upon the second and third defenses above stated.

There was judgment in favor of the defendants dismissing plaintiff's suit, and the plaintiff has appealed.

We shall take up the issues presented in the above order.

The record shows that Poche was employed by the Nash Company in the capacity of a trimmer and upholsterer. It was not a part of his duty to demonstrate automobiles or to use them in any way for the company's account. Mr. E. R. Spiller, who was the superintendent of agencies of the Nash Company, bought a Nash car at Lafayette, La., with his own funds, and the Nash Company had no interest in the ownership of the car. Spiller, desiring to sell the car, left it at the Nash Company's place of business and authorized the sales agents to sell it for his account, agreeing to pay commission to the particular agent who sold it, but the Nash Company was to receive no part of the commission. On the day of the accident, Poche had completed his work about eight o'clock p. m., and, while still in overalls which had the name of the Nash Company sewed on them, borrowed Mr. Spiller's car from a salesman by the name of Greenblatt, who had the key to the car. The dealers' license tag was attached to the automobile and Poche drove it from the company's place of business on St. Charles street down to Canal street, and thence downtown on North Peters street to the vicinity of the French Market, where he went to get something to eat. Before leaving the company's place of business Poche had punched his time card, ceasing his labors for the day.

After completing his meal he proceeded up North Peters street towards Canal street for the purpose of returning to the place of business of the Nash Company in order to change from his overalls to his street clothes, so that he might go home in the street car. While Poche claims that the automobile was parked in the triangular space customarily used for parking automobiles, the great preponderance of the evidence shows that he came from the direction of St. Philip street, one block below the French Market, just before the accident.

The accident happened where Dumaine street crosses Decatur and North Peters streets. A triangular section of the French Market extends from St. Philip street to-

ward Dumaine street, bounded on one side by North Peters street and on the other side by Decatur street. The market proper, however, stops short of Dumaine street, but lines drawn parallel to the market's sides would meet at a point approximately at Dumaine street. There is, thus, an imaginary triangular piece of ground where the market would be if extended, and which merges into Decatur street and North Peters street, these two streets coming together at Dumaine street. There do not seem to be any curbs or other indications of boundary of this triangular piece of ground, which, in fact, might appear to be a part of either Decatur or North Peters street. There seems to be a general recognition of the fact that such constitutes a sort of neutral ground, and in fact, it is used as a parking place for automobiles. On North Peters street there are two street car tracks, the one nearest the river being used by cars going downtown, the other by cars going uptown.

At the time of the accident there was a red light in the center of this intersection as an indication that it was a dangerous street crossing. On the night in question the plaintiff, who was a night yardmaster for the Southern Pacific Railroad, went to a restaurant on Dumaine street to get something to eat and was returning to work on the downtown sidewalk of Dumaine street, going in the direction of the river, near which the railroad yards are located.

The great preponderance of the evidence shows that the plaintiff crossed Decatur street within the paved triangular portion and was proceeding across North Peters street and was just past the center of the street towards the river side of North Peters street when the Nash car driven by Poche, who was alone, at a rate of speed estimated at thirty, or thirty-five miles an hour, came from the direction of St. Philip street proceeding on North Peters street in the direction of Canal street. The automobile was on the left-hand side of the street in the direction in which it was going and then pulled over towards the right-hand, or woods side of the street and plaintiff attempted to get out of the way of the on-coming automobile when he was struck by the right front fender of the machine. The blow knocked him to the ground unconscious and injured his left leg. The machine then stopped some distance away, estimated about one hundred feet from where it struck the plaintiff, and Poche backed the machine to the scene of the accident, placed the plaintiff in the car and took him to the Charity Hospital, where his injuries were treated. He returned home that night, and the next day was placed in Touro Infirmary, where he remained fourteen days and was treated by Dr. Denegre Martin.

There were four witnesses to the accident, including the plaintiff, who testified in his behalf. The only witness to the accident for the defendants was Poche.

The evidence of the officers of the Nash Company that Poche was without authority to use the automobile and that he used it for his own purposes, that the company did not own the automobile, but that it was owned by Spiller, who likewise testified to the same fact, is uncontradicted.

The fact that Poche was wearing overalls with the Nash Company's name on them at the time of the accident and was using the Nash Company's dealer's license tag does not, in our opinion, overcome the clear preponderance of the evidence that Poche was acting without the scope

of his employment on a venture of his own and was not authorized by the company to use its license tag or the automobile which had been left with it to be sold. It is shown that Greenblatt, a mere salesman who had the car in charge for demonstration purposes, was without authority to loan it to Poche for his personal use. Where a servant has abandoned and turned aside entirely from the master's business and engages in some purpose wholly his own, the master ceases to be liable for his acts. Cusimano vs. Spiess Sales Co., 153 La. 551, 96 So. 118.

We have, therefore, reached the conclusion that the Nash Company is not liable.

We are of the opinion that Poche was guilty of negligence in operating the automobile at an excessive rate of speed at a dangerous street intersection where he should have anticipated that pedestrians might cross, and in failing to keep a proper lookout while approaching a dangerous crossing. At street intersections in large cities, where the traffic is heavy and congested, drivers of automobiles are required to use the greatest care and caution so as to prevent and avoid accidents. When approaching such places automobiles should be placed under control, as to speed and movement, and a proper lookout should be maintained. In the case of Da Ponte vs. Uzzo, 5 La. App. 105, this court said:

"Upon approaching the intersection of two much frequented streets within the limits of this city, it is the duty of a chauffeur to check up his speed and to use more than ordinary care to avoid injury to persons or property."

In Berry on Automobiles (4th Ed.) p. 298, sec. 312, it is stated:

"Pedestrians and automobile drivers have, aside from statute or ordinance changing the rule, equal rights in the use of highways. Each must use the highways with deference to the rights of the other, and in the exercise of reasonable care to avoid injuring the other and for his own safety.

"The person having the management of the automobile and the traveler on foot are both required to use such reasonable care as the circumstances of the case demand, and exercise of greater care on the part of each being required where there is an increase of danger.

"The right of the plaintiff as a pedestrian to free and unobstructed passage also has not been abridged by modern conditions of travel. There is no law or principle of law, or of reason, which confines foot-passengers to particular crossings. Such a restriction would be very inconvenient and annoying. The street should be kept in such condition that foot-passengers may be able to cross, with a reasonable degree of safety, using proper care themselves at any and all places."

In section 313, p. 301 thereof we find:

"* * * The pedestrian, like the driver of an automobile in the exercise of ordinary care for his own safety and for the safety of others, is required to anticipate the presence of persons and vehicles upon the highway; but it cannot be said that the duty which is upon the pedestrian is as urgent as that devolving upon the driver of an automobile, for the foot-passenger's action or inaction in the premises is far less important to the other users of the highway. The impact of the body of a pedestrian, absorbed in his own meditations, upon a passerby, might be measurably uncomfortable, but it would seldom be hazardous to either life or limb, whereas the impact of an automobile in motion while the driver is asleep might cause as certain death as if the injured person had been wilfully pursued and wantonly crushed.'"

Poche testified that he was parked within forty feet of where the accident occurred, had not shifted from second gear, and was running at about fifteen miles an hour at the time he struck plaintiff; that there was another automobile on his

right side, proceeding on North Peters street in the direction of Canal street, the same way he was going, and that the plaintiff ran directly in front of the other automobile, and, apparently unable to see the car he (Poche) was driving, ran into the front part of the car near the right front side of the hood, and that he immediately stopped at the scene of the accident.

Poche, however, is contradicted by the plaintiff and three other witnesses, one of whom saw him coming at a great rate of speed from the direction of St. Philip street, a block below the market. He was also contradicted by a special officer, as well as other members of the train crew, who were at the crossing on Dumaine street, the scene of the accident. They corroborated the plaintiff's version that Poche was driving the car at an excessive rate of speed, and that plaintiff had crossed the street to within about twelve or fourteen feet of the river curbing of North Peters street at the time he was struck. Plaintiff testified that he saw the Nash car coming some one hundred and fifty feet down the street, and that it had room to pass him either on the river or lake side of the street; that if the car had continued on its course it would have passed the plaintiff in safety, but that Poche suddenly swerved the car towards the right and ran into plaintiff. We are of the opinion that the clear preponderance of the evidence shows that the accident was caused by the fault of Poche, and that the plaintiff was not guilty of negligence.

Counsel for plaintiff, in seeking to hold the Nash Company, has referred us to section 269 of Berry on Automobiles (4th Ed.) in which the author states that it was held in Massachusetts that, where license number plates were loaned by the dealer to the owner of an automobile, the dealer would be held liable for damages on the theory that he intentionally assisted and participated in creating a nuisance in violation of the rights of travelers upon the highway in permitting another to use the license number plates in violation of a statute of the state. The author's authority was McDonald vs. Dundon, 242 Mass. 229, 136 N. E. 264, 26 A. L. R. 1243 (1922). Counsel also cites the case of Gould vs. Elder, 219 Mass. 396, 107 N. E. 59, to the same effect.

We might say that it would be with great reluctance that this court would follow the above doctrine, but we do not believe those cases are pertinent here, because the evidence shows that the Nash Company did not intentionally, through any authorized agent acting through the scope of his employment, lend the license plates to the defendant Poche; further, there is no statute in this state that makes it a nuisance for a man to be upon the public highway without the proper registration of his automobile, as appears to be the case in Massachusetts. Lastly, we might add that we see no causal connection between the accident and the lending of the license plates, even if their use had been properly authorized.

As to the quantum, Dr. Denegre Martin, who is the surgeon for the Southern Pacific Railroad, by which plaintiff was employed as yardmaster, and who treated plaintiff, says that he had a contusion of the left knee, evidently a laceration of the ligaments, "with some ecchymosis and a contusion of the left arm which was minor, and the principal injury was to his left knee" that "it was simply a question of rest and the application of heat—that is all; no operation"; that he aspirated

the left knee, as plaintiff had some diffusion in that knee; that the drainage of the left knee was not a serious matter, but was done for relief; that these injuries to the knee are always painful; that he thought plaintiff was on the road to recovery or would not have discharged him; that you cannot tell if these knee injuries are permanent or not, as that is something which depends upon the patient.

Plaintiff also testified that he suffered severe pains; that he was rendered unconscious for two minutes as a result of being thrown to the ground by the car; that he had to have two stitches in his side, and his left leg was bruised from his hip to his toes. It further appears that plaintiff was taken to Charity Hospital, where he was treated for his injury on the night of the accident; and the next day he went to the Touro Infirmary, where he remained fourteen days. He lost two months from his work and was earning $270 a month. The Southern Pacific Railroad paid all the medical expenses. We shall therefore allow for the loss of earnings for two months at $270 a month, or $540. For pain and suffering and for the injuries above described we have concluded to allow him the sum of $750.

For the reasons assigned the judgment appealed from, insofar as it dismisses plaintiff's suit against Charles L. Poche, is reversed, and it is now ordered that there be judgment in favor of Walter C. Schaumburg, plaintiff, against Charles L. Poche, defendant, in the full sum of $1,290, with legal interest from judicial demand until paid, defendant Charles L. Poche to pay the costs of court in both courts; and in all other respects the judgment appealed from is affirmed.