**PEGG et al. v. TOYE BROS. YELLOW CAB CO. et al.**

**No. 16277.**

Court of Appeal of Louisiana. Orleans.

May 4, 1936.

John P. Sullivan, David Sessler, and Gordon Boswell, Trial Attorney, all of New Orleans, for appellants.

Lazarus, Weil & Lazarus, of New Orleans, for appellee.

JANVIER, Judge.

Plaintiffs are the brothers and sisters of Alvin Aschaffenburg, aged 44, unmarried, who died on January 11, 1934, as the result of injuries received by him at about 8:30 o'clock p. m. on Saturday, January 6, 1934, when he came into collision with an automobile near the neutral ground of Howard avenue, a short distance from the corner of Baronne street.

Alleging that their brother was struck and knocked down by a taxicab belonging to Toye Brothers Yellow Cab Company and operated at the time by an employee acting within the scope of his employment, and charging that the accident resulted solely from the negligence of the driver of the said cab, plaintiffs seek solidary judgment against the said taxicab company and National Surety Corporation in the sum of $25,713, the latter corporation being made defendant because of the alleged fact that it had issued to the taxicab company a surety bond under which it had agreed to 'hold said Toye Brothers Yellow Cab Company harmless and to identify and defend it against any claims for damage, etc.

Defendants deny that Aschaffenburg was struck by the taxicab in question, and aver, on the contrary, that, as the said taxicab approached the point at which the accident is said to have occurred, its operator, Jules La Coste, saw a man (who proved to be Aschaffenburg) lying in the street, having been struck by some other vehicle which had already passed.

In the alternative defendants allege that if, in fact, Aschaffenburg was struck by the said cab, he walked into its side as it was passing, and that, in any event, he was injured solely as the result of his own carelessness in not keeping a proper lookout for his own safety as he proceeded across a dangerous artery of traffic.

In the district court there was solidary judgment in favor of the four plaintiffs and against defendants in the sum of $2,931. Both defendants have appealed and plaintiffs, by answer to the appeal, have asked, that the judgment be amended and increased to the amount prayed for in their petition.

It is obvious that the first and most important question is one of fact: Whether Aschaffenburg was struck by the taxicab, or by some other vehicle which had already passed before the taxicab arrived upon the scene.

The evidence is quite conflicting. The driver of the taxicab and two ladies who were passengers therein state that the cab did not strike any one and that at no time did anything occur out of the ordinary. These two ladies testified that they were looking out of the cab and would have seen Aschaffenburg had he walked into it, or in front of it, and that after they passed the point at which he is said to have been struck, the driver of the taxicab turned to the curb at the right and stopped his cab beyond the point at which Aschaffenburg was found.

The driver says that when he saw the man's (Aschaffenburg's) body lying prone in the roadway, he pulled over to the curb and then went back to him.

On the other hand, Capt. David B. Jackson, an ex police officer, Mr. C. Priestley Flournoy, a well-known young man of this city, and Samuel G. Robinson, a 62 year old colored porter, who, for several years, had worked in that immediate neighborhood, state positively that they saw the accident as it occurred; that they have no doubt whatever as to the facts; and that the taxicab actually struck Aschaffenburg as he was passing in front of it. Strange to say, Mr. Flournoy, who was driving his automobile up Baronne street at the time, is of the opinion that Aschaffenburg was walking in a downtown direction when the taxicab hit him, whereas the other witnesses agree that he had been walking up Baronne street and was proceeding across the lower roadway on his way to the neutral ground when the accident occurred.

The witnesses for plaintiff are not in accord as to the exact spot at which Aschaffenburg was picked up after the accident, but we do not think that their differences on this point cast doubt on their truthfulness. The important question is that they testify unequivocally that they saw him

struck by the taxicab. There is evidence that immediately after the occurrence other persons in the neighborhood who gathered made statements to the effect that the victim had been struck by some other vehicle, but, in view of the finding of the trial court, which is not obviously incorrect, we can reach no other conclusion than that the taxicab was the vehicle involved in the accident. We also believe that the failure of the taxicab driver to see Mr. Aschaffenburg is in itself conclusive proof of his negligence.

That the two ladies in the taxicab knew nothing about it, is, we think, easily explained. They were on their way to the ball of the Twelfth Night Revelers and were, no doubt, discussing matters interesting to them. It is very apparent that something to some extent unusual did occur at that point because, when they were asked about the matter later that night, they both remembered that there had been some slight jolt, or bump. Both were of the opinion that it had been nothing more severe than is usually caused by crossing over street car tracks, and they went to the scene later and were driven over the tracks and concluded that the bump caused by those tracks was what they had felt on the earlier occasion. Nevertheless, they did recall that there was some slight bump, and we cannot avoid the impression that it must have been a little more unusual and severe than they were accustomed to feel on such tracks, because, had it been only the usual jolt sustained in going over a track of that kind, probably they would not have recalled it at all.

We next consider the question of contributory negligence. The evidence shows that Mr. Aschaffenburg, after walking up the river side sidewalk of Baronne street, had stepped into the roadway of St. Joseph street, had crossed that roadway, had passed the sharp point formed by the corner of St. Joseph street and Howard avenue and occupied by what is known as the "Flatiron Building," and had practically crossed the lower roadway of Howard avenue when he was struck. Manifestly he was at a point from which he could not recede when the taxicab approached him. He had crossed almost the entire roadway. Therefore, under the traffic ordinances of the city of New Orleans, he was entitled to the right of way. The controlling ordinance is No. 13702 C. C.S., which provides, in paragraph (a) of section 2 of article IV that:

"The operator of any vehicle shall yield the right of way to a pedestrian crossing the roadway within any marked crosswalk, or within any unmarked crosswalk at an intersection, provided pedestrian has started across the street before the vehicle shall have entered the intersection."

Still, we have great difficulty in understanding how Mr. Aschaffenburg could have been struck had he been exercising due care for his own safety. It is shown that there were no other vehicles approaching and there was nothing to cause him confusion or alarm.

Nevertheless, in order to hold that his conduct constituted contributory negligence which should bar recovery, it would be necessary for us to say that wherever a person, in the full possession of his faculties, is struck while crossing a street and there is nothing to cause confusion or excitement, he is guilty of negligence as a matter of law. Here there are no facts at all which would justify the conclusion that he was guilty of such negligence except the ultimate fact that he was struck.

If the law placed upon a plaintiff the duty of disproving contributory negligence, then the plaintiffs here could not recover because there is no evidence whatever to which they might point as showing that their brother was not negligent.

But, on the contrary, the law places upon the defendant the burden of proving contributory negligence and, obviously, the defendants here have failed to prove contributory negligence on the part of Mr. Aschaffenburg, because the record contains no proof at all as to his actions just prior to the moment of impact. To hold that Mr. Aschaffenburg was guilty of negligence would, as we have said, require a holding that under such circumstances a pedestrian who is struck is guilty of negligence as a matter of law.

It is well settled, as we have stated, that the burden of proving contributory negligence, where that contributory negligence is relied on as a defense, is upon the defendant.

In the American Law Institute's Restatement of Law of Torts, vol. 2, p. 1250, § 477, appears the following:

"If the plaintiff makes out a prima facie case, the defendant, if he relies upon the plaintiff's contributory negligence, must prove it."

In Huddy's Cyclopedia of Automobile Law, vols. 15–16, p. 315, it is said that:

"In those cases where defendant relies on plaintiff's contributory negligence as a

matter of affirmative defense, provided such contributory negligence is not disclosed by plaintiff's own evidence, or his pleading, the burden of proving freedom from contributory negligence is not on the plaintiff, but the burden of proving contributory negligence is on defendant, * * *".

See, also, 3 Blashfield's Cyc. of Automobile Law (Permanent Ed.) § 9.

We note the condition in the above-quoted statement from Huddy "provided such contributory negligence is not disclosed by plaintiff's own evidence," and we conclude here that the contributory negligence is not disclosed by plaintiff's own evidence because as we have said, there is no evidence whatever except the ultimate fact that Mr. Aschaffenburg was struck.

That the rule as stated has found application in Louisiana is evidenced by a reading of various cases, notably Schick v. Jenevein, 145 La. 333, 82 So. 360, 362, in which it is said that:

"The plea of contributory negligence is also a special defense, in which the defendant carries the burden of establishing it by a preponderance of the evidence."

In Mequet v. Algiers Mfg. Co., Ltd., 147 La. 364, 84 So. 904, 905, the Supreme Court said:

"The burden of proof, of course, was upon plaintiff to show negligence on the part of defendant, and the plea of contributory negligence was a special defense, which the latter had to support, once his own fault had been established."

It appears to us that, however great may be the possibility that Mr. Aschaffenburg was careless in crossing the street, we cannot assume negligence on his part, but must assume that he was exercising due caution and care. Starting, then, with that assumption, we cannot hold him guilty of contributory negligence in the absence of proof, which proof defendant has not adduced.

In Gibbs v. Illinois Central R. R. Co., 169 La. 450, 125 So. 445, the Supreme Court of Louisiana considered a case in which it was sought to dismiss a suit by plaintiff on exception of no cause of action, the argument being that the allegation that the deceased had been walking on the track in front of the approaching train, in itself, showed contributory negligence on the part of the deceased which should prevent recovery. But the Supreme Court refused to adopt the conclusion contended for, holding that the mere fact of the accident, under such circumstances, did not of itself prove contributory negligence.

In Baltimore & Ohio R. Co. v. Goodman, 275 U.S. 66, 48 S.Ct. 24, 72 L.Ed. 167, 56 A.L.R. 645, the Supreme Court of the United States in effect held that, as a matter of law, there can be no recovery for death or injury sustained by a person who could have seen or heard an approaching train. Later, in the case of Pokora v. Wabash R. R. Company, 292·U.S. 98, 54 S.Ct. 580, 78 L.Ed. 1149, 91 A.L.R. 1049, the Supreme Court announced the doctrine that each case should be permitted to stand upon its own facts and said that the opinion in the Goodman Case had gone too far in announcing that under such circumstances the negligence of the injured party should be presumed to exist as a matter of law.

■ In view, then, of the jurisprudence on the subject, we conclude that, however probable it may be that Mr. Aschaffenburg was negligent in permitting himself to be struck by the approaching automobile, we cannot assume, as a matter of law, that he was so negligent.

We are thus forced to hold, in the absence of proof to the contrary, that Mr. Aschaffenburg was not himself guilty of such negligence as should bar recovery here.

In Creevy v. D. H. Holmes Company, Ltd., 16 La.App. 562, 134 So. 413, Schaumburg v. Nash-Mississippi Valley Motor Company, 14 La.App. 77, 129 So. 390, and in Lanphier v. D'Antoni, 14 La.App. 441, 131 So. 628, are found cases involving situations similar to that presented here.

The plaintiffs have answered the appeal and have prayed that the amount awarded be increased, and they particularly contend that they should be allowed to recover certain items which have been questioned by the defendant. They claim that they paid $44 for nurses who attended their brother and that they paid $337 for his burial and $150 for a cemetery lot in which to inter his remains. There was also a claim for $200 representing the cost of placing a coping on the tomb at his grave, but their claim for this item has been abandoned.

Counsel for defendants maintain that plaintiffs are not entitled to the amounts expended for nurses, for the funeral, and for the burial plot, which were allowed in the district court, and that such items, if recoverable at all, may be claimed only by the representative of the estate of the deceased,

900

or by the heirs after they have been sent into possession of his estate.

■ We pass first to a consideration of the amount to which the plaintiffs are entitled as the result of the loss of companionship, love, and affection of their brother. He was 44 years of age, and it is shown that, though he and the plaintiffs did not reside together, there was the usual fraternal love and affection existing among them. While it is impossible to establish any fixed schedule of allowances for death, we must, nevertheless, take into consideration awards which have been made in other cases which involve similar circumstances. Our attention naturally fixes itself upon the case of Quaid v. Heymann et al. (La.App.) 150 So. 867, because there are to be found facts involving fraternal relationships quite similar to those which are before us. We allowed to sisters $1,750 each and to a brother $1,000, and we made an additional award to one sister who was blind and in whose case we took into consideration potential financial support which might have been received later. Included in that award was an amount allowed as the pro rata portion of each in the claim inherited from the deceased brother.

In that case, however, the members of the family resided together and there was evidence of most unusual and remarkable family and fraternal affection.

Without in any way intending to make any invidious distinction, we cannot but feel that, in the Quaid Case, there must have been particularly acute and poignant mental distress at the loss of a member of the household who was even more than a brother because of the remarkably close association, which justifies the belief that the amounts awarded there are somewhat greater than would have been otherwise awarded.

There, too, Mr. Quaid lingered in great agony for several hours. Here, Mr. Aschaffenburg, though he lingered for five days, appears to have been unconscious during that entire time, though he did give evidence of intermittent acute suffering.

Taking all of these facts into consideration, we have decided to award to each of the plaintiffs, for the loss of love, companionship, and affection, and also for the pro rata portion of the inherited claim, the sum of $1,000. In making this award, we have taken into consideration various other cases decided in this state; for instance, Hebert v. City of New Orleans, 163 So. 425, in which we allowed a sister who lived in another parish $1,000, and Chustz v. Negrotto, 165 So. 479, in which we allowed $1,500 each to the "orphaned younger brother and sister for loss of companionship, love, and affection of their 19 year old sister." We have also considered the case of Thompson v. New Orleans Railway & Light Company, 148 La. 698, 87 So. 716, in which the Supreme Court allowed brothers and sisters $1,000 each, and Langenstein v. Reynaud, 13 La.App. 272, 127 So. 764, in which there was an award of $2,000 each to two sisters.

■ We next approach the question of the right to recover the amounts expended in the last illness and for the burial of the deceased brother.

In Horrell et al. v. Gulf & Valley Cotton Oil Company, 15 La.App. 603, 131 So. 709, we discussed the question of the right of the father to recover for the necessary expenses of the last illness and burial of his son and, in considerating an exception of no cause of action, we held that these items were not recoverable.

Counsel for plaintiffs assert in their brief that the language used in that opinion must have been inadvertent, because they say that obviously we did not intend to hold that the heirs may not claim such items of damage until after they have been sent into possession by judgment of court. Whether or not it was necessary to so hold in that case or in this case, we do not undertake at this time to say, but we did not so state in our opinion in that case. The language to which counsel refers is not the statement of the opinion of this court on the subject, but is a statement of the contention advanced by the defendant in that case.

Here the evidence shows that the amounts referred to were actually expended by one of the sisters of the deceased. Whether or not there was any legal obligation on her part to pay the expenses of last illness and burial of her brother, there was at least a natural obligation to do so, and, when she did so, we see no reason why she should not be permitted to claim that to that extent she has been damaged by the negligent act of defendant's employee. If she was damaged to that extent, then she is entitled to recover those items.

We think, however, that whatever the petition may allege, the amounts were expended by her and not by all the plaintiffs, and were as follows: Nurses, $44; for expenses of the funeral, $337; and for the burial plot, $150—or a total of $531.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, amended so as to read as follows:

It is ordered, adjudged, and decreed that there be judgment in favor of Mrs. Mathilda Pegg, Leo Aschaffenburg, and Henry Aschaffenburg, and against defendants, Toye Brothers Yellow Cab Company and National Surety Corporation, in solido, in the full sum of $1,000 each, with legal interest thereon from judicial demand until paid, and that there be judgment in favor of Miss Lulu Aschaffenburg, and against Toye Brothers ·Yellow Cab Company and National Surety Corporation, in solido, in the full sum of $1,531, with legal interest from judicial demand until paid, and that defendants pay all costs.

And that in all other respects the judgment be and it is affirmed.

·Amended and affirmed.