CREEVY v. D. H. HOLMES CO., LTD.

(April 27, 1931. Opinion and Decree.)
(May 11, 1931. Rehearing Refused.)

Arthur J. Peters, of New Orleans, attorney for plaintiff, appellant.

Wm. H. Talbot, of New Orleans, attorney for defendant, appellee.

JANVIER, J. Recovery is sought by plaintiff to compensate him for injuries sustained, medical bills incurred, and loss of earnings, which resulted when an automobile truck, owned by defendant and operated by one of its employees admittedly acting within the scope of his employment, struck plaintiff while he was crossing St. Joseph street in this city.

Plaintiff, a man sixty-two years of age, employed in the type-setting department of the Daily States, a New Orleans newspaper, at about 5:30 o'clock in the late afternoon was walking up the river side of Camp street on his way to his place of employment, situated on the upper river side corner of Camp and St. Joseph streets.

He states that when he reached the lower river side corner of that intersection he saw that two street cars, followed by several auto trucks, were proceeding down Camp street; that he saw no vehicles on St. Joseph street which would prevent his crossing that street; that he therefore proceeded on his way from the lower to the upper side of St. Joseph street and was just in the act of stepping upon the sidewalk on the upper side, when he was struck by the truck in question, which had been following the street cars down Camp street, but which, upon reaching the intersection, had turned to the right around the corner and so close to the curb that it was impossible for him (plaintiff) to complete the crossing; that he caught hold of the front end of the truck and held on until it was brought to a stop, after drawing him a few feet.

Plaintiff charges that the driver of the truck was negligent in not according to him the right of way to which he was entitled by reason of the fact that he had practically crossed the street, and that the said driver was also at fault in that he made the turn without sounding his horn and without giving any warning or signal of his intention to do so.

The truck driver states that he had turned to the right into St. Joseph street not near the right-hand curb, as alleged by plaintiff, but almost in the middle of the street; that plaintiff, who had been standing on the sidewalk on the lower side of the street, waited for the passage of another truck going in the opposite direction, and that, just as the other truck passed, plaintiff ran from behind that other truck directly into the left front fender of the truck of defendant.

The district judge found that the truck had turned to the right very near to the curb and had struck plaintiff just as he was about to step upon the sidewalk, but rendered judgment dismissing plaintiff's suit for the reason, as given by him, that plaintiff was guilty of negligence on his own part in not being more vigilant and in not more quickly negotiating the few remaining feet separating him from the zone of safety, the sidewalk.

We experience no difficulty in reaching the conclusion that the truck was, as our brother below found, very near to the sidewalk, and that plaintiff had almost reached the curb when he was struck, but we are unable to concur in the view that the injured party was himself negligent in not seeing that the truck was about to strike him and in not accelerating his speed.

The city traffic ordinance, known as No. 7490 C. C. S., includes provisions governing the relative rights of autos and pedestrians at crossings and intersections. That ordinance has been introduced in evidence, and we find that, by virtue of paragraph 2 of article 7 of section 1 thereof, "pedestrians shall have right of way over vehicles, provided pedestrians shall give warning of their intention to cross the street· by holding up their hand in a manner to be plainly seen."

It is also provided that "this shall not entitle the pedestrian to enter or cross the intersection regardless of approaching traffic, but shall be interpreted to require vehicles to change their course, slow down, or stop, to permit pedestrians to negotiate the crossing with safety."

We are unable to determine whether plaintiff, before· entering the street at the lower curb thereof, had held up his hand, as set forth in the ordinance, but we· do not believe that, if he failed to do so, he therefore deprived himself of the right of way to continue across the street, after he had negotiated practically the entire width thereof. The street is more than forty feet wide, and a pedestrian who has crossed some thirty-five feet of such a street cannot be deprived of the right to continue, because, before he entered the street some thirty-five feet back, he failed to hold up his hand to give notice of his intention to cross, which intention was even better brought to the notice of motorists by the actual crossing and by the actual traversing of thirty or thirty-five feet than it could have been by any manual signal. The pedestrian had the right to continue on his way. He was sixty-two years. of age, and consequently, was no longer possessed of the agility of a man of lesser years. He had no reason to anticipate that the truck would turn from its course, or that, if it should so turn, its driver would not do as the ordinance requires. He was justified in assuming that, if it did turn, the driver would change his course, slow down, or stop, in order to avoid striking a pedestrian already beyond the center of the roadway.

"Drivers of motor vehicles owe children, aged, infirm and drunken pedestrians, especial care, particularly at intersections, where pedestrians, observing police regulations, have the right of way." Syllabus, Johnson v. Boyle, 5 La. App. 362.

Plaintiff, then, was placed in a dangerous situation, not by his negligence, but by the carelessness of defendant's driver. He, of course, was bound, nevertheless, to exercise all due care for his own safety, but to assume that he could have moved more swiftly and did not do so is to assume that he deliberately caused himself to be injured. We cannot so assume. Boutte v. New Orleans Terminal Co., 139 La. 945, 72 So. 513. We, therefore, feel that the negligence of the truck driver caused the accident, ·and that the defendant is liable. ·

Plaintiff's injuries consisted of a "luxation of the right knee, which was very much enlarged and painful, and he had some brush burns on the right knee joint and there was also loss of motion and it was painful." With reference to the mean-

ing of the word "luxation," plaintiff's physician said:

"If we say luxation we mean it is over an extensive area and a sub-luxation is not as large and a contusion is still smaller."

When asked whether the injury to the knee joint would prove permanent, the doctor said:

"That is a question I would not like to answer. I will make my answer reservedly. I think any injury to a joint in a man past the meridian of life, it never recovers to the extent it should, especially the knee joint, because it is in a ball and socket joint. The motions of the knee joint is dependent on the tissues that support that joint."

Plaintiff claims to have been unable to return to work for about four months, but the fact that he did return and has apparently been doing the same arduous work since leads to the conclusion that the injury did not prove permanent. During the disability he was deprived of his earning capacity for 112 working days. Prior thereto he earned $6 per day. The bill of his doctor amounted to $95, and for medicine he expended $1.20. His total expenses and financial losses were shown to be $768.20. We are of the opinion that a further allowance of $750 would be adequate, in view of former awards for similar injuries, and we have therefore concluded to render a decree in his favor in the sum of $1,518.20.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, annulled, avoided, and reversed, and that there now be judgment in favor of William A. Creevy, plaintiff, and against D. H. Holmes Company, Limited, defendant, in the full sum of $1,518.20, with legal interest from judicial demand and for all costs of court.