## CHARLIE YEE v. CHARLEY CABS, Inc.
### No. 14942.

Court of Appeal of Louisiana. Orleans.

Jan. 7, 1935.

Hugh M. Wilkinson, O. Miles Coe, Fred W. Oser, Harry Nowalsky and Geo. M. Leppert. all of New Orleans, for appellant.

James P. O'Connor and Robert A. Ainsworth, Jr., both of New Orleans, for appellee.

JANVIER, Judge.

Charlie Yee, injured when struck by a taxicab belonging to defendant corporation, Charley Cabs, Inc., and operated by an employee acting within the scope of his employment, brings this action in forma pauperis under Act No. 156 of 1912, as amended by Act No. 260 of 1918.

The accident occurred at about 11 o'clock at night on September 14, 1933, when Yee, a pedestrian, attempted to cross Canal street at the corner of Baronne street. He had left the sidewalk on the upper river corner and had proceeded more than halfway across the driveway between that corner and the neutral ground when the taxicab struck him. There was a semaphore traffic light on that corner, and Yee maintains that he had waited on the sidewalk for the light to change, and had then stepped into the street, and had almost reached the neutral ground when the taxicab, in violation, so he charges, of the provisions of the city traffic ordinance, No. 13702, C. C. S., crossed Baronne street and struck him.

Yee charged that the driver of the cab violated the traffic ordinance in that he entered the intersection when the traffic light was not green, and that he was further at fault in operating the cab at a speed which did not permit of its being stopped within a reasonable distance, and he also asserts that the driver was not maintaining a proper lookout ahead.

Defendant first raises the question of plaintiff's right to proceed under the pauper acts, contending that his financial condition is not such as to bring him within the contemplation of those statutes. Defendant also contends that there was no negligence on the

part of the driver of the taxicab either with regard to the traffic signal or with reference to his control over the cab, but asserts that the cause of the accident was the carelessness of Yee himself in attempting to run across the street when the traffic light facing him had not turned in his favor and when the cab was in plain view and so near as to make the danger of collision imminent.

In the court a qua the contention that Yee should not have been permitted to proceed as a pauper was overruled, and, after the evidence on the merits was submitted, there was judgment, in favor of plaintiff for $300, and from that judgment defendant has appealed.

The contention that Yee is not entitled to the benefits of the pauper acts was not raised by answer to the petition nor by rule nisi, and no attempt was made to obtain a ruling on that question until, on the trial of the case, plaintiff, in answer to a question, stated that he had earned "sometimes four or five dollars a day and sometimes three or four dollars a day." After he had elaborated somewhat on this statement, counsel for defendant turned to the trial judge and said, "I think he does not come under the pauper act, your Honor." At this point the judge a quo made his ruling as follows: "I'm not impressed with that; we know these Chinese, they gamble every nickel they make."

Conceding that the point was properly raised and that it could, at that time, be considered by the trial judge, and in view of our interpretation of the pauper acts as expressed in Amelia Singleton v. First National Life Insurance Company, 157 So. 620, decided on November 26, 1934, there may be some doubt of this, we feel that the evidence as to Yee's finances or lack of finances does not warrant a disagreement with our brother below on the question of the application of the pauper acts. Necessarily much discretion rests in the court a qua in matters of this kind, and, while it is true that Yee did testify as to considerable earnings at times, his entire testimony gives the impression of an impoverished condition and a present lack of funds which lead to the conclusion that the ruling was not erroneous.

On the merits the evidence shows beyond peradventure that the taxicab could not have been at the point at which it was at the time it struck Yee unless it had entered the intersection in violation of the traffic ordinance.

Nor do we find anything to corroborate the statement of the driver that there was another vehicle on his right and that Yee ran across in front of the other vehicle and into the taxicab or into its path.

We have given much thought to the fact that manifestly Yee could have seen the taxicab had he looked, and that therefore had he looked, he would not have stepped into the zone of danger, and we have hesitated to affirm a judgment in favor of an injured plaintiff, whose injuries would not have been sustained had he himself been on the alert for his own safety. We, however, have considered two facts: First, that Yee had almost completely crossed the roadway when he was struck; and, second, that he was crossing under the protection of a traffic light erected and operated for the specific purpose of making it safe for pedestrians and vehicles to cross on proper signals. The Yee had almost crossed the intersection cannot be lost sight of. Langenstein et al. v. Reynaud, 13 La. App. 272, 127 So. 764; Creevy v. D. H. Holmes Co., 16 La. App. 562, 134 So. 413. Then too, the fact that, when Yee stepped into the street, the light facing him was favorable must be borne in mind, for there can be no doubt that on such crossings some measure of reliance may be placed upon such lights.

In Buckley v. Featherstone Garage, Inc., 11 La. App. 564, 123 So. 446, 450, appears the following: "Under the traffic light system, a motorist who is proceeding under the proper signal should not be held to that same high degree of care and vigilance as if no such system prevailed. He has the right to assume that the signals are understood and will be observed, and he is not required to anticipate that pedestrians will violate the ordinances and rules and enter a crossing on the wrong signal. The danger at such crossings is less than if there were no such signals, and therefore, less care is exacted."

While it is true that in the Buckley Case it was the driver of a vehicle and not a pedestrian who was relying upon the protection afforded by a traffic signal, nevertheless, the same rule applies in the case of a pedestrian.

We therefore conclude that in crossing at that moment Yee was within his rights in relying upon the traffic signal, and, while he was not entirely absolved of the duty of exercising care, nevertheless, under the particular circumstances which we find in the record, we do not think that his failure to notice the approaching cab constitutes contributory negligence.

While Yee was not severely injured, he sustained a laceration and contusion of the left foot which, according to his physician, incapacitated him about ten days or two

weeks. During that period he was required to use a stick. His physician states that, while he considered the injuries of a minor nature, he was required to pay the patient a great many visits. His bill for services amounted to $30.

We do not believe that under the circumstances the amount awarded, $300, is excessive.

The judgment appealed from is affirmed.

Affirmed.