## FOSTER et ux. v. HERRIN MOTOR LINES, Inc., et al. (CHARITY HOSPITAL OF LOUISIANA, Intervener).

### No. 17195.

Court of Appeal of Louisiana. Orleans.

June 12, 1939.

A. M. Suthon and M. C. Scharff, both of New Orleans, for appellants.

Cyril F. Dumaine, of New Orleans, for intervener Charity Hospital of Louisiana.

Leslie P. Beard, of New Orleans, for appellees.

McCALEB, Judge.

On May 21, 1937, at about 5 p. m., Vernon Foster, a young boy ten years of age, received severe personal injuries when he and the bicycle on which he was riding came in contact with the right side of a large motor van, owned by Herrin Motor Lines, Inc., and operated by its employee, Dan Welch, on Terpsichore Street near the riverside corner of St. Charles Avenue. The boy's parents, Mr. and Mrs. Bertrand Foster, have brought this suit individually and on his behalf to recover damages for the injuries sustained by him, claiming that the accident occurred as a result of the negligence of the driver of the Herrin Motor Lines' van.

The named defendants in the case are Herrin Motor Lines, Inc., the owner of the van, Dan Welch, the driver, and Trinity Universal Insurance Company, the public liability insurance carrier of Herrin Motor Lines, Inc.

Plaintiffs allege that the accident occurred in the following manner: That their son, Vernon Foster, was riding his bicycle on Terpsichore Street towards the Mississippi River; that the Herrin Motor truck or van was also proceeding along Terpsichore Street in the same direction in which their son was traveling and to the rear of his bicycle; that when the boy arrived at the intersection of St. Charles

Avenue and Terpsichore Street, he proceeded to cross the avenue somewhat in advance of the defendant's truck or van; that, after he completed the crossing, he continued to ride into the riverside roadway of Terpsichore Street for a short distance past the intersection; that, at that time, the truck caught up with him and was in the act of passing him when the driver veered or swerved suddenly to the right or towards the side of the street occupied by their son and that he was unable to get out of the way of the truck for the reason that there was an automobile parked on the uptown side of Terpsichore Street approximately 15 feet from the St. Charles Avenue riverside curb. They further aver that their son, being thus confronted with the emergency created by the act of the driver of the truck in suddenly swerving it to the right, was unable to save himself; that the right side of the trailer, which formed part of the truck, struck the boy and his bicycle; that, as a result of the impact, he and the bicycle were thrown violently to the pavement under the truck and that the right wheel of the trailer passed over his body, causing severe and permanent injuries to him.

In due course, the defendants appeared and, in answer to plaintiffs' petition, denied any responsibility in the premises. They set forth in detail that the accident was caused solely as a consequence of the young boy's negligence who, they allege, attempted to pass the truck on its right side at a point in the roadway between the truck and an automobile parked on the uptown side of Terpsichore Street without having sufficient and safe room for such passage. They further pleaded alternatively the contributory negligence of the child which they averred was such as to bar plaintiffs' recovery.

The Charity Hospital for the State of Louisiana at New Orleans filed an intervention in the case claiming from the defendants the sum of $601 for medical, surgical and hospital services rendered by it to the injured boy.

The case proceeded to trial on the issues above set forth and the district judge, after hearing the evidence, found for the defendants and dismissed plaintiffs' suit. Wherefore this appeal.

It will be seen, from the foregoing recital of the pleadings, that the questions involved in this case are mainly ones of fact. The plaintiffs, however, preliminarily assert that the defendants, in their answer, have not pleaded alternatively the defense of contributory negligence and that, because of their failure to do so, primary negligence on the part of the truck driver has been judicially admitted.

This contention is without merit. An examination of the answer reveals that the defendants have denied not only that Welch was guilty of negligence but that they have set forth that the accident occurred solely through the fault of young Foster, particularizing his neglect in detail. Following this, they recite that they specifically plead contributory negligence as a bar to the right of recovery and further on, in the alternative, they aver "that if on the trial of this cause it should be shown that there was negligence on the defendants' part, that said negligence, if any, was not the proximate cause of said accident and resulting injuries and that said accident was unavoidable." We think that the answer is quite complete and that it cannot be fairly interpreted to mean that the defendants admitted primary negligence on the part of the driver of the truck. The cases of Baden v. Globe Indemnity Company, La.App., 145 So. 53, and Howard v. Rowan, La.App., 154 So. 382, 383, cited by plaintiffs, are without application.

We next consider the facts of the case. Plaintiffs' theory of the accident is that their son was riding his bicycle on Terpsichore Street in front of the truck; that the truck driver attempted to pass him at a time when the boy and the truck were approaching, and were very close to, an automobile which had been parked on the upper side of Terpsichore Street about 15 or 20 feet from the corner of St. Charles Avenue; that the driver, upon overtaking him, swerved the truck to the right, thereby squeezing the boy in between the right side of the truck and the parked automobile, and that, as a result, he and the bicycle were struck by the side of the van and thrown in the roadway under its rear wheels.

The only witness produced by the plaintiffs in an attempt to substantiate their beliefs is their young son and we find that his account of the accident is not convincing. He relates that, just before the occurrence, he was riding his bicycle on Terpsichore Street in the direction of the river; that he stopped when he reached the St. Charles Avenue intersection; that, at

that time, he had not seen the truck; that he proceeded across the intersection and that he had just about passed the neutral ground of St. Charles Avenue when he first became aware of the presence of the truck. He further says that the truck was overtaking him and that, when he had reached the riverside pedestrian crossing of St. Charles Avenue and Terpsichore Street, it caught up with him and jammed him into the first automobile parked on the upper side of the street.

The defendants produced five witnesses to the accident, viz: Welch, the truck driver, Mrs. R. C. Knight, N. C. Erwin, Hal Wingate and L. J. Godbery.

Welch states that he had been delivering freight at Alexandria, Louisiana, and was returning to the defendants' garage in New Orleans when the accident occurred; that, on the return trip, he had stopped at the Pan-American Oil Company's refinery (about 30 miles from New Orleans) where he had received for delivery approximately 8,000 pounds of oil; that he was driving at a slow speed on Terpsichore Street; that, when he reached the lakeside corner of the intersection of St. Charles Avenue, he stopped his truck in obedience to a traffic stop sign in order to permit vehicles using the uptown lakeside roadway of St. Charles Avenue to proceed; that the traffic on St. Charles Avenue was heavy; that, as soon as he was afforded an opportunity to cross the roadway, he drove forward onto the neutral ground where he again stopped his truck for the purpose of allowing the passage of traffic traveling on the riverside roadway of the avenue; that when the road was clear, he crossed the roadway and entered the riverside of Terpsichore Street; that he noticed the presence of parked vehicles on both sides of Terpsichore Street and that he was traveling along at a very slow rate of speed (not in excess of five or six miles per hour) when he heard a scream. He further relates that, at that time, the front part of his truck had passed in between the first two automobiles parked near the corner of St. Charles Avenue and that the rear end of his trailer or van was approximately four or five feet past the riverside corner of the intersection. He further declares that, upon hearing the scream, he immediately applied his air brakes, thereby bringing the truck to a quick stop, and that he dismounted from the cab and ran to the rear where he found the boy and his bicycle under the right rear wheel of the trailer. He emphatically states that at no time, during his journey across St. Charles Avenue and into the riverside portion of Terpsichore Street where the accident occurred, did he see the boy on his bicycle and that, at the time he heard the scream, he did not know that the child had gotten under the wheel of his vehicle. He also asserts that, when he, with the help of another man, extracted the boy from under the wheels of the trailer, the boy said that someone had shoved or pushed him under the truck.

Mrs. R. C. Knight, testifying for the defendants, stated that, at the time the accident occurred, she was walking over the upperside neutral ground of the St. Charles Avenue and Terpsichore Street intersection proceeding in the direction of the river; that, when she reached the riverside street car rails, the truck had already crossed over the neutral ground and was in the riverside roadway of Terpsichore Street; that, when the rear of the trailer arrived at the riverside pedestrian walk of St. Charles Avenue, she saw the boy on a bicycle come from the riverside roadway of St. Charles Avenue and turn into Terpsichore Street; that, as he did so, he put up his left arm and hand; that it appeared to her as though he was either attempting to ward off the trailer or was holding on to it and that he was thrown underneath its right rear wheels.

At the time the accident happened, Hal Wingate, an automobile salesman for the Dixie Motor Company, was standing in the roadway with L. J. Godbery near the hood of the first automobile parked on the upper side of Terpsichore Street. Wingate testified that, when the accident occurred, the front part of the truck had passed the point where he was standing; that the boy was riding his bicycle at the right side of the trailer; that he attempted to pass through the space between the automobile and trailer and that, while so doing, he brushed into him (Wingate) and was thrown under the truck. Wingate's evidence is supported by the statement of Godbery. These witnesses, as well as Mrs. Knight and the truck driver Welch, assert that the boy was conscious after the accident and that he stated that someone pushed him into the truck.

N. C. Erwin also testified for the defendant. He says that he was driving in the lower roadway of Terpsichore Street

towards St. Charles Avenue and that, upon noticing the truck and trailer crossing the avenue and approaching his car from the opposite direction, he pulled over and stopped on the riverside curb of Terpsichore Street in order to give it sufficient room to pass. He also states that, when he first saw the truck proceeding over the St. Charles Avenue intersection, he observed the boy standing with his bicycle at the riverside pedestrian crossing; that, when the truck got over the intersection, his vision of the boy became obscured by its presence in the roadway and that, because of this, he did not see the boy come in contact with the side of the trailer. He proclaims, however, that the truck was going at a very slow rate of speed and that, as soon as the boy screamed, the driver brought it to an immediate stop.

A careful analysis of the statements of the witnesses in this case has been sufficient to satisfy us that the truck driver was without fault. Welch's evidence impresses us favorably and we believe him when he says that he did not see the boy on the bicycle ahead of him at any time prior to the accident. In fact, it is our opinion that the boy was neither in front of the truck at any time nor was he ever in a position where the driver had an opportunity to observe him.

The testimony of Mrs. Knight is also entitled to considerable weight. She was walking across St. Charles Avenue and had a clear view of the occurrence. She was without interest in the outcome of the case and, notwithstanding the grueling cross-examination to which she was subjected by plaintiffs' counsel, her evidence has not been discredited in any respect.

Moreover, in spite of the criticism of plaintiffs' counsel, we feel that the evidence given by Wingate and Godbery is entitled to credit. It is true that these witnesses are somewhat confused with respect to the exact manner in which the accident happened, but there can be no doubt that they witnessed the mishap and we believe them when they say that the boy was at no time in advance of the truck; that he came from the rear of it and that he was thrown under it in some unaccountable manner.

Counsel lay much stress upon the testimony of Mr. Erwin. They argue that, since he says that the boy was standing by his bicycle in the pedestrian lane before the truck negotiated the St. Charles Avenue crossing, it was the duty of the truck driver not only to see him but to have the movement of the vehicle regulated so that it would not come in contact with him. We see little merit in the contention. In the first place, we have much doubt as to whether Mr. Erwin actually saw the boy prior to the accident in the position in which he places him. His testimony is most indefinite as to whether the boy was on his bicycle or standing beside it and his statement of the boy's position is in discord with the evidence of all other witnesses in the case (including the boy himself). Furthermore, even though we were of the opinion that Mr. Erwin was correct, we cannot see that his evidence would be sufficient to alter the findings of our brother below. For, if it be true that the boy was in a stationary position at the crossing, there would have been no reason for the driver (if he had seen him) to anticipate that he would run into the side of the trailer. The truck was being operated at a very slow speed (five miles per hour) and the driver had its movements under full control. The facts in Albert v. Munch, 141 La. 686, 75 So. 513, L.R.A.1918A, 240; Creevy v. D. H. Holmes Company, Ltd., 16 La.App. 562, 134 So. 413; Fontaine v. Dorsey, 15 La.App. 282, 131 So. 506; Ziegler v. Lamantia, 13 La.App. 70, 126 So. 262; Matulich v. Crockett, La.App., 184 So. 748; Cimo v. Karstendiek, La. App., 173 So. 548, and other matters relied upon by plaintiffs' counsel are not comparable to the circumstances here presented.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.