Plaintiff's daughter, Mary Elizabeth, aged nine and one-half years, suffered physical injuries when she was run into and knocked down by the automobile of defendant, Tom Henderson, on Highway No. 80, in the western part of the city of Minden, Louisiana. The car was going westerly. Henderson was operating it. He was accompanied by his wife and daughter, Mrs. B.L. Chappel. The accident occurred on a tangent that begins at the westerly end of a gradual upgrade, right-hand curve. The concrete portion of the road is 20 feet wide. There are no sidewalks on either side of the road about the locus of the accident, but on the north side thereof, opposite the point of collision and extending westerly, there is an uneven gravel shoulder of irregular width used by pedestrians. The little girl came from this side of the road immediately prior to being injured. From the locale of the collision, east and west, for several hundred feet, the vision of a motorist is unobstructed.
It is alleged that immediately before attempting to cross the highway, plaintiff's daughter waited on the north shoulder thereof for traffic conditions to warrant doing so; that for this time she was in full view of motorists going westerly for one-fourth of a mile; that defendant, Henderson, saw or should have seen the child for this distance east of the point of collision; that when she entered upon the concrete defendant was a considerable distance away and had ample time and opportunity to bring his car under such control as would have made it possible to avert the collision regardless of the subsequent movements of the girls, or either of them.
Plaintiff instituted this suit against Henderson and the carrier of insurance on his car, Home Indemnity Insurance Company, to recover damages on behalf of his minor daughter and for physician's bill and hospital expenses incurred in treating her for the injuries caused by the collision. The action is buttressed upon the alleged negligence of Henderson in the operation of his car in the following particulars, to-wit:
1. Driving at an excessive and unwarranted rate of speed;
2. In not keeping a proper lookout for others rightfully using the highway;
3. That he failed to reduce the speed of his car and to maintain such control of it that would enable him to avert running into the child after he saw her upon the highway ahead of him; that he failed to observe that degree of care and caution required of, him by law after seeing the child when near to and upon the highway.
Defendants admit the accident and some injury to plaintiff's daughter therefrom, but deny that it occurred because of any negligence of the driver of the car. They aver that the car was being driven at a reasonable rate of speed and when it reached a point where the child was only a few feet from the front end thereof, she ran or jumped suddenly and without warning in front of the car at a time when it was impossible to avoid colliding with her. In the alternative, it is pleaded that the collision occurred from the girl's own contributory negligence and for that reason no recovery can be had on her behalf. From a judgment for plaintiff defendants appealed.
The injured child lived with her parents whose home at the time of the accident was south of the highway and easterly from where the accident occurred. Her mother had directed her to go to a grocery store on the north side of the highway, west of the locale of the accident, and purchase some onions. She had made the purchase and was returning home when injured. From the grocery store she followed the shoulder of the road easterly. Just before attempting to cross the road she observed a girl friend in her parents' yard adjacent to the road's shoulder. She made a few steps to her left and engaged this friend in a brief conversation. When this had ended, she resumed her journey homeward. She traveled at an angle over the shoulder to the edge of the concrete and then attempted to cross over. She testified that when she had gotten to about the center of the concrete *Page 307 
she saw a car on her right coming toward her; that she stepped back to allow this car to go by, and then looked westerly for other traffic, and, quoting her testimony, — "about that time I turned around and the car hit me". She further testified that before she started across the road she looked to her left (easterly) for traffic and saw none. She was not asked whether she walked or ran toward the road after the conversation with the other girl ceased, and, therefore, gave no testimony on the subject.
Immediately prior to the collision defendant's car was going at a speed not in excess of 25 miles per hour, keeping about two feet from the north curb. The little girl was struck by the bumper's right end. She was knocked slightly forward and fell horizontally across the road with her head near its center. The car was stopped about two feet from her body. The femur of the right leg was broken just above the knee. There were no other serious injuries.
Besides the injured girl, Henderson and Mrs. Chappel are the only witnesses to the child's movements immediately prior to the accident. Mrs. Henderson was riding beside her husband but was engaged in entertaining Mrs. Chappel's baby, who was sitting in her lap. She first observed the little girl at moment of impact.
Mr. Henderson admits that he first saw the two girls while they were in conversation approximately 100 feet from him, and some 20 or 30 feet from the edge of the road. He did not sound the car's horn as they were then in a place of safety and he assumed that they would remain so until he passed. However, he says: "She came on down and gradually came to the edge where the walk abuts the concrete * * * but, she came on and she was moving fast." He also testified that when the child got to the edge of the concrete his car was from 25 to 30 feet from her. He then forcefully applied the brakes, which were efficient, but the car did not skid. The impact was not violent. This is borne out from the fact that the child was not knocked very far, was not run over nor rendered unconscious. She received no head wounds. Moving at a speed of 25 miles per hour on a dry surface, approximately 30 feet are required to bring a car of the character Mr. Henderson was driving, to a stop. His testimony and that of the child agree as to there having been a car coming from the west that passed the scene of the accident at the moment thereof.
Mrs. Chappel was sitting in the middle of the rear seat and was looking up the road just before the accident occurred. Her testimony substantially corroborates that given by her father.
The learned trial judge, in written reasons for judgment, stated that he was convinced that all the witnesses endeavored to relate the facts of the unfortunate accident as they saw them. We fully concur in this observation. He held that although the injured child was negligent in attempting to cross the road when and where she did, Henderson's negligence was the proximate cause of the accident.
Although exhibiting sincerity in giving her testimony, we think the accident did not occur exactly as the little girl believes and testified it did. It is likely, that after spending a few minutes talking to her little friend, she realized that she had consumed more time than her mother would expect in making the trip to and from the grocery store. This being true, as she left her friend her first thought was to hurry home. We believe she ran or trotted to the road and as she got on the pavement she noticed the car coming from the west. She was traveling diagonally and to avoid running into the moving car in front of her, she turned farther to her left, which caused her to face or nearly face defendants' car. She was not over five feet from the north edge of the pavement when struck. Evidently, when struck, her right leg was ahead of the left one.
Plaintiff contends that there is liability whether Henderson's version of the accident or that of the injured child be correct. His position is that it was Henderson's obvious legal duty, after seeing the girls, to have sounded the horn, reduce the car's speed, and to have brought it under such control as would enable him to avoid running into the girls or either of them, regardless of their subsequent indiscreet movements. On the other hand, defendants argue that since the girls' actions prior to time plaintiff's daughter suddenly attempted to cross the road, did not indicate that either purposed to cross it, and since he was driving at a lawful speed on his side of the highway, no blame attaches to Mr. Henderson in the operation of the car; that he was not legally required to do more than he had done prior to the accident and *Page 308 
was doing when it occurred, in order to avoid such a happening; that the accident, so far as he is concerned, was simply unavoidable.
We agree with the position of plaintiff.
[1] The jurisprudence of this state teems with decisions discussing and defining the duty of motorists toward children on sidewalks and along or near to roadsides. There is some lack of uniformity in pronouncements of the courts on that subject. In the final analysis, the facts of each case must and do, as a rule, determine the question of liability or nonliability. However, the courts have made it clear that a motorist is held to a high degree of care in the operation of a motor vehicle on the streets and highways where children assemble or walk, to the end that they be not injured or killed, notwithstanding youthful indiscretion and propensity.
[2] In the present case the operator of the car saw the little girls near the highway at a time he could have brought his car under such control that collision with either would have been impossible, regardless of sudden action on the part of either. True it is, his rate of travel was not per se unlawful, but that fact did not fully protect him against all contingencies. Because the road ahead of him, as he says, was clear, he assumed that no obligation rested upon him to reduce his speed or sound the horn. Had he reduced his speed to 15 miles per hour after seeing the girls 100 feet distant, the accident could and doubtless would have been averted. He could have stopped the car, proceeding at this speed within the distance she was from him when she undertook to cross the road. Had he sounded his horn, doubtless the little girl would have heard it and observed the car before attempting to make the crossing. Therefore, we find and hold that Mr. Henderson was grossly negligent in the operation of his car immediately prior to and at the time of the accident, in view of conditions then and there prevailing.
Of course, it goes without saying that in attempting to cross the highway at the time and place she did, whether walking or running, plaintiff's daughter was guilty of negligence.
As we view the case, it turns upon the question of proximate cause; that is, whether Henderson's negligence or that of the child was the proximate cause of the accident.
The latest decision of the Supreme Court that involved questions of the character herein tendered for solution, so far as we are aware, is that of Guillory v. Horecky et al.,185 La. 21, 168 So. 481, 482. In that case the child killed was eleven years old. She was run into by a truck of defendant, operated by his agent. She and other children about her age were traveling along the edge of the highway, going home to lunch, when the accident occurred. We quote from the opinion, as follows: "He (the truck driver) admitted having seen the children more than a block away, walking towards him on his right side on the road, about 2 1/2 or 3 feet from the ditch, and at that time, he sounded his horn. Moreover, he admitted that even though he saw the children playing on the road, nevertheless, he continued on his right side of the road within five feet of the edge of the ditch until the front part of the truck was practically even with the children, at which time he says that plaintiff's daughter tagged one of her companions and ran towards the truck, and in order to avoid striking her, he suddenly turned the truck to the left, but in spite of his efforts to avoid her, the child ran into and struck her head on the rear right side of the trailer attached to the truck."
The court found that the operator of the truck was traveling at the rate of 25 miles per hour. It further said: "We think that the truck driver either failed to apply the brakes, which he should have done, trusting that he could avoid striking the child by swerving to the left, or was going faster than is shown by his and the testimony of plaintiff's witnesses. However, in the instant case we do not think it was material as to what rate of speed the truck was moving. Suffice it to say that the driver did not operate his vehicle, after having seen the children, with such prudence and care and under such control that he could have instantly stopped the truck and avoided the accident. However, the fact that the driver continued to operate the truck within five feet from the edge of the road after having seen the children on the same side of the road within two or three feet from the edge of the ditch, at the rate of twenty to twenty-five miles per hour, as the Court of Appeal found, was gross negligence and a wanton disregard for the safety of the children."
It is said in the early part of the opinion that the question for consideration and *Page 309 
decision was: Whose negligence, the truck driver's or the little girl's, was the proximate cause of the accident? In disposing of the case, the court said: "In other words, taking the facts as found by the Court of Appeal, it is our opinion that under the law the defendant is liable, since the driver was guilty of negligence which contributed to the accident and the child was of such immature age and mentality as to be incapable of contributory negligence, which was not even pleaded."
We construe this statement of the court, in effect, to mean that the truck driver's negligence was the proximate cause of the accident, because it is virtually said therein that the little girl was negligent, but because of her immature age such negligence could not be considered in determining liability for the accident resulting in her death.
And so we hold in this case; that is, that regardless of whether or not the injured girl was capable of being contributorily negligent in connection with the accident, such negligence was not the proximate cause of the accident.
Other cases, among the many, in point or nearly so, are Cimo v. Karstendick, La. App., 173 So. 548, and cases and authorities therein cited; Doyle et ux. v. Nelson et al., La. App., 11 So.2d 645, wherein many cases from various jurisdictions are cited and quoted from.
[3] In the Cimo case, the court emphasized the lack of discretion on the part of children as a factor in accidents wherein they are injured, and in referring to the adult operator of the vehicle, said [173 So. 550]: "He must so manage his car that the children need not, to avoid injury, exercise the care that is expected of adults."
Pertinent to the rule embodied in the above quotation it is said in Moreau v. Southern Bell Telephone Telegraph Company, Inc., La. App., 158 So. 412, 414: "* * * In view of the degree of care required of him by the law in such a situation, he was at fault and negligent in starting forward before he was sure that the highway was clear and that all the children had passed. This fault was the proximate cause of the accident. It is true that it is negligence for a pedestrian to cross a road from behind a car heedlessly and without looking out for traffic. But in the case of children a tendency toward such heedlessness is recognized, and knowledge of it is imputed to all drivers. It is for this reason that a greater degree of care is required of them when children are seen along the road. It would be unreasonable to say that drivers are required to anticipate heedlessness on the part of children, but, if they do not, no liability attaches, because the children are contributorily negligent in being heedless. * * *"
Defendants cite and rely upon the following authorities to support their defense: Payne v. Seibert, 4 La. App. 591; Braud v. Taxa Cab Company of New Orleans, Ltd., 129 La. 781, 56 So. 885; Jacobs v. Williams et al., La. App., 160 So. 861; Lynch v. Knoop, 118 La. 611, 43 So. 252, 8 L.R.A., N.S., 480, 118 Am.St.Rep. 391, 10 Ann.Cas. 807; Ainsworth v. Murphy, 5 La. App. 103; Vergo v. Shreveport Railways Company, 19 La. App., 647, 139 So. 737; Marquette et ux. v. Cangelosi, La. App., 148 So. 88; Douga v. Ancona Baking Company, Inc., La. App., 193 So. 271.
The last five of these cases are cited in support of the contention that the injured child in this case was old enough and intelligent enough to be capable of contributory negligence and being negligent, recovery may not be had for her account. The facts of these cases, as well as those of the other three cases cited by defendants, are not on all fours with the facts of the present case. In the latter five cases the court either did not consider the question of proximate cause or held that the driver's negligence was not the proximate cause of the accident involved.
For physical injuries, pain and suffering, of plaintiff's daughter, there was judgment in plaintiff's favor for her account for $2,500. He was given judgment for the expenses paid by him for treating his daughter. Plaintiff is satisfied with both awards; defendants do not complain of them. In view of this situation, affirmance of the judgment in all respects is in order, and, this we do, with costs.
McINNIS, J., is recused. *Page 310