83 So.2d 494 (1955)
Andrew J. JENKINS, et al., Plaintiffs-Appellees,
v.
FIREMEN'S INSURANCE COMPANY OF NEWARK, N. J., et al., Defendants-Appellants.
No. 8419.
Court of Appeal of Louisiana, Second Circuit.
November 2, 1955.
Rehearing Denied November 29, 1955.
Writ of Certiorari Denied January 16, 1956.
*495 Jackson, Mayer, & Kennedy, Hargrove, Guyton, Van Hook & Hargrove, Shreveport, for appellants.
Charles L. Barnett, Shreveport, for appellees.
HARDY, Judge.
This is an action by plaintiff, individually and for the use and benefit of his minor child, in which he seeks damages resulting from grievous and permanent personal injuries sustained by his daughter, Dora Marie Jenkins. Named as defendants are Cecil L. Albritton, driver of the automobile which inflicted the injuries, C. R. Minor, Jr., his employer, and Firemen's Insurance Company of Newark, the liability insurer of defendant Albritton. From a judgment in favor of plaintiff in his individual capacity in the sum of $9,670.87, and in his capacity as tutor for the use and benefit of his minor child, Dora Marie Jenkins, in the sum of $50,000, defendants have brought this appeal.
The accident occurred between 5:00 and 5:30 P. M. of September 29, 1953, on paved Highway No. 71 in Bossier Parish at a point about two miles south of the west gate entrance to Barksdale Field and almost immediately in front of the residence of the Jenkins family which is located approximately thirty feet west of the highway right-of-way. Defendant, Albritton, a consulting engineer employed by defendant Minor, accompanied by a fellow employee, one John W. Everett, was driving his 1951 Chevrolet Sedan automobile north on Highway 71 at a speed variously estimated at from 45 to 60 miles per hour and, at about the time and place described, was meeting and passing a stake-bodied truck which was moving south on the highway, driven by Samuel J. Crawford, a negro employee of McDowell Builders Supply Company. Just as the two vehicles met, Dora Marie Jenkins, who had been in a position several feet west of the paved slab of the highway, attempted to run across the highway. In the effort she darted suddenly from behind the truck directly into the path of the Albritton automobile and was struck by the right front thereof and hurled some 28 feet from the point of impact to a position on the east side of the highway. The driver Albritton, who had glimpsed the child through the slatted side of the body of the passing truck as she began to run at full speed into the highway, immediately sounded his horn and applied his brakes, at the same time turning his car slightly to the right in a vain attempt to avoid striking the child. Measurements made shortly following the accident by a State Trooper established the fact that after the application *496 of the brakes the car traveled 62 feet to the point of impact and came to a complete stop 28 feet past said point, and that during the greater part of the total distance of 90 feet required to bring the car to a stop the right wheels of the vehicle were on the gravel shoulder to the east of the paved slab. At the time of the accident Dora Marie Jenkins was thirteen years, four months and nine days of age. The Jenkins family had moved to the residence in which they were living at the time of the accident on December 31, 1952, immediately prior to which time its home had been on a farm near Robeline, and, before that, at other rural locations in Natchitoches and Sabine Parishes.
The above facts are undisputed. There is some conflict and uncertainty with reference to other material facts. According to the testimony of the defendant Albritton he had observed the little girl on the west side of the road, apparently jumping or playing, at a time when he was between a quarter and a half mile distant from the point of the accident, which distance he attempted to fix more accurately by estimating it to be about 1,800 feet. Admittedly Albritton did not keep his attention focused on the child, but was concentrating on the approaching truck, although he testified that he was under the impression that she had left the place at which he first observed her, and, in any event, he did not notice her again until he glimpsed her upraised hands through the side of the McDowell truck as she began to run across the highway. Albritton's companion, Everett, testified that he did not see the child until the car was about 250 feet south of the point of impact, at which time she was three or four feet to the left of the paved slab of the highway. This witness testified that the little girl was not walking but she seemed to be jigging or shuffling, or, as he said, "maybe dancing."
Neither of these witnesses observed any action which indicated that the unfortunate little girl would attempt to cross the highway. There was no traffic moving in either direction between the Albritton car and the McDowell truck. The negro, Crawford, driver of the truck, was the only witness who testified that the little girl, whom he had noticed by the side of the road, appeared as if she had any intention of crossing the highway.
Other relevant facts relate to the locus in quo. The Jenkins house, located, as we have said, to the west of the highway and about 30 feet distant from the right-of-way, is about 300 feet south of Peters Bros. Store, which is also located on the west side of the highway. Except for one other house located between the Peters Store and the Jenkins residence there are no other buildings in the immediate vicinity. The photographs and the engineer's plat of the locality show that there is no roadway nor place of crossing from one side to the other of the highway anywhere nearby and these exhibits also reflect the fact that there is nothing to the east of the highway in the nature of any sort of attraction which would indicate the reasonable possibility of the need for pedestrian crossing of the highway. To the east of the highway, apparently along the edge of the right-of-way, there is a line of public utility poles, for either telephone or electrical service, then further to the east a railroad track, and on the opposite side of the tracks there are located, at intervals, some negro tenant houses.
Plaintiff's petition specifies seven charges of actionable negligence on the part of defendant Albritton, which were allegedly the sole, direct and proximate causes of the accident, as follows:
1. Operating his automobile in a careless and reckless manner.
2. Failing to slow down and take precautions after he saw or should have seen said child run up to the highway.
3. Failing to slow down and take precautions after he saw said child playing on the highway shoulder.
4. Being inattentive to his driving by talking and conversing to his passenger after he saw said child in apparent danger.

*497 5. By failing to keep his car under proper control.
6. By driving at an excessive rate of speed of 60 miles an hour into a congested area and into apparent danger.
7. By failing to sound his horn or warn the child of his approach.
The testimony in the record overwhelmingly sustains the conclusion that the defendant Albritton was not operating his automobile in a careless and reckless manner; he was not being inattentive to his driving, inasmuch as both the testimony of himself and his companion was positive on the point that they were not talking at the time; he did have his car under proper control; he was not driving at a speed of 60 miles an hour, and he was not approaching a congested area, nor was he proceeding into any apparent danger.
In considering the details of the above points we are impressed with the fact that the uncontradicted testimony in the record establishes the fact that Albritton brought his automobile to a stop, from the time he applied the brakes, within a distance of 90 feet. Reference to the long accepted table of stopping distances, as set forth in 14 T.L.R. 503, shows that the net braking distance, under excellent conditions, of a car moving at 40 miles per hour is 62.07 feet, while the net braking distance, under excellent conditions, of a car moving 50 miles per hour is 98 feet. It is therefore evident that the Albritton car would not have been moving at a speed of as much as 50 miles per hour, and the circumstance that, during the greater part of the actual braking distance, the right wheels were off of the concrete slab and on the gravel shoulder would have lessened the distance applicable under excellent conditions. We think it is established, with reasonable certainty, that the car was being driven at approximately 45 miles per hour. Certainly this was not an excessive rate of speed on an open highway in an uncongested area at a point where there was no highway crossing of any kind. We point out that this speed is the approximate estimate given by both the occupants of the automobile. We further think it is clear, under the circumstances described and in view of the actual stopping distance of 90 feet, that the car was under the full and proper control of the driver.
The only remaining question bearing upon the charges of negligence above enumerated depends upon a resolution as to whether Albritton was under a legal responsibility and obligation to take additional precautions, after seeing a child playing on the shoulder of the highway, by further slowing his speed and sounding his horn. Careful examination of all cases involving injury to a child or children by automotive vehicles indicates that our jurisprudence has not established, nor, indeed, could it have established within reason any hard and fast rule by which liability resulting from negligence can be fixed. Able briefs of learned counsel for both plaintiff and defendants have pointed out those cases which they regard as being most favorable to their respective contentions, but there are numerous other pronouncements which are equally deserving of consideration. There is no necessity for engaging in a detailed discussion of the many cases which have dealt with this particular question, but we think it is desirable to briefly analyze some in order to point our conclusion. In Doyle v. Nelson, 11 So.2d 645, this court held that a motorist driving at a speed of between 30 and 40 miles per hour on a city street, having observed children playing in the street approximately a block ahead of his position, was not free from negligence which caused or contributed to the injuries to a three-year old child who ran into the automobile. We think this finding cannot be applied to the instant case, in view of the utterly dissimilar facts involved.
In Rainwater v. Boatright, La.App., 61 So.2d 212, 213, we restated the general rule that "a motorist aware of the presence of children is held to the highest degree of care in the operation of the motor vehicle." But we exonerated the defendant in the cited case from liability for injuries received by a five-year old child who darted across the street from behind a parked automobile.
*498 In Stamps v. Henderson, La.App., 25 So.2d 305, we held a motorist liable for injuries sustained by a nine and a half year old child on the ground that he had violated the high degree of care which is required in the operation of a motor vehicle on the highway in close proximity to children. The conclusion reached in the cited case was predicated, in some degree, upon the opinion of the Supreme Court in Guillory v. Horecky, 185 La. 21, 168 So. 481, 483, in which the court found a truck driver guilty of negligence in connection with the injury of a child when he continued to operate his truck "within five feet from the edge of the road after having seen the children on the same side of the road within two or three feet from the edge of the ditch, at the rate of twenty to twenty-five miles an hour * * *." Our opinion also cited Cimo v. Karstendiek, La.App., 173 So. 548, and Moreau v. Southern Bell Telephone & Telegraph Co., Inc., La.App., 158 So. 412, with reference to the pronouncements in the said cases, respectively, that a motorist must operate his car so that children need not exercise the same care that is expected of adults, and that a tendency toward heedlessness on the part of children is well recognized and the knowledge thereof is imputed to all drivers.
In Walker v. Shreveport Railways Co., La.App., 71 So.2d 683, though conceding the general rule of unusual care by motorist passing children on or near streets or highways, we held that the driver of a bus was free from negligence since he did not have any reasonable opportunity to observe the action of the child after she left a place of safety and entered a position of danger.
The case of Burvant v. Wolfe, 126 La. 787, 52 So. 1025, 29 L.R.A.,N.S., 677, which is strongly emphasized by able counsel for plaintiff is inapplicable because of the vast difference in factual circumstances from the case at bar. In the cited case the accident occurred on a city street at a time when a crowd was gathering and the eleven-year old boy, like others, was drawn by curiosity and excitement to the center of attraction. The opinion of the court specifically stated in its conclusion that the defendant driver's whole attention was centered on finding an opening for the passage of his car through the gathering crowd and that he was unmindful of the danger to which he exposed others. Obviously it is exceedingly difficult, if not impossible, to fix any sort of general rule with reference to the nature of care required by an automobile driver in an effort to avoid injury to children who are upon or near a street or highway. The general rule as stated in 60 C.J.S., verbo Motor Vehicles, § 396, p. 964, reads as follows:
"The operator of a motor vehicle is under a duty to exercise ordinary or reasonable care, commensurate with the circumstances, to avoid injury to children upon or near the street or highway."
Almost every situation enjoins upon a court some modification or stricture of the general rule, and the degree of ordinary or reasonable care accordingly varies with the circumstances, progressing through the categories of extraordinary care, Jamison v. State, La.App., 7 So.2d 373; Peperone v. Lee, La.App., 160 So. 467; extreme care, Brooks v. Labruyere, La.App., 173 So. 466; great care, Guillory v. Horecky, 185 La. 21, 168 So. 481; a high degree of care, Stamps v. Henderson, La.App., 25 So.2d 305; the highest degree of care, Doyle v. Nelson, La.App., 11 So.2d 645; the utmost care, Peperone v. Lee, supra; and special care, Creevy v. D. H. Holmes Co., 16 La. App. 562, 134 So. 413.
All of these variations with reference to the nature and degree of care which should be exacted from motorists must be considered in connection with the factual circumstances of each individual case.
We observe that counsel for plaintiff, in brief, attempting to point the analogy between the facts in Stamps v. Henderson, supra, and the instant case, made the statement that:
"* * * in this case it is shown that the child had her back to the offending car and was not aware of its approach."
*499 We do not find any support in the record for a statement accepting as established the fact that the child had her back to the approaching car. The negro truck driver, Crawford, appears to be the only witness who made any effort to testify as to the exact position of the little girl, and he declared that during the entire period of his observation she was facing the highway. It is true he testified in one instance that she was watching his truck the whole time, but it is further true that he testified in another instance that he did not know whether she was watching his truck or not. As we have above commented, we were not impressed with the credibility of the testimony of this witness but nowhere else in the record do we find any testimony bearing on the little girl's position and, in any event, the record is completely devoid of any indication that the position, attitude or action of the child was such as would have enjoined upon Albritton a superlative degree of caution.
It is obvious from a reading of any substantial part of the jurisprudence of our state dealing with motor vehicle accidents involving children that an important consideration directly bears upon the duty of a motorist to observe any circumstances which would indicate an extraordinary hazard arising from the presence of a child near the street or highway. The danger and the need for unusual care and precaution increases in proportion to the number of children congregated at or near a given point; the occurrence of an incident which might prove attractive; the existence of an apparent crossing or locality used for traversing a highway; the presence on or near the opposite roadside of anything calculated to attract children; the use of wheeled instruments by children, such as bicycles, wagons, scooters, etc. We reiterate the observation that none of these, nor any other similar factors were susceptible of observation in the instant case.
On the authority of Brown v. Wade, La. App., 145 So. 790, counsel for plaintiff contends that defendant, Albritton, by the exercise of reasonable care, could have averted the accident, citing in support of this position Albritton's testimony on cross-examination to the effect that he could have averted the accident by applying his brakes at a distance of 250 feet, at which time he could have seen the position of the little girl which was observed by his companion, Everett. We think this conclusion is utterly lacking in logic or reason for it is equivalent to saying that Albritton could have avoided the accident by bringing his car to a stop at the time he first saw the little girl at a distance of 1,800 feet, or by beginning his journey to Shreveport a second or two later than his actual starting time, or by taking any one of a multitude of other hypothetical or contingent measures of safety. The question before us is not whether the accident could have been avoided by additional precautions on the part of Albritton, but rather whether he was guilty of negligence through failing to take precautions indicated by the factual situation which existed. In our opinion this latter question must be answered in the negative. Recapitulating the factual circumstances which were, or should have been, apparent to a careful and observant motorist, we find that a little girl, over thirteen years of age, being in a position of safety several feet from a highway, in full view of a motorist approaching from the south and driving on the opposite side of the highway, without the presence of any condition or attraction on the other side which would indicate the probability of such crossing; without being in the neighborhood of any pedestrian or vehicular crossing; without being in the company of any other persons, unexpectedly, without any warning whatsoever, without any indication of such intention, left her position of safety and darted behind a passing truck and into the path of an automobile moving on the opposite side of the highway. Though every feeling of human compassion, every response of pity, would persuade us to such a conclusion, we cannot find, in law or reason, any justification for convicting the driver of the offending automobile of negligence under these conditions.
The only uncertainty with reference to the circumstances surrounding the actions of young Dora Marie Jenkins was injected *500 into the case by the testimony of Crawford, the driver of the McDowell truck. Long and serious consideration of the testimony of this witness, given on the trial of the case, has convinced us that it is entirely unworthy of belief. We reached this conclusion not only upon the basis of the inconsistencies which are apparent in the testimony of the witness on trial but because of the irreconcilable variations, in the recital of simple facts, between this testimony and the statement given by Crawford, over his signature on October 12, 1953, to the insurance adjuster. In the statement of October 12th Crawford declared that he was driving his truck south on the highway at a speed of 35 to 40 miles per hour; that he saw the little girl on the right shoulder of the highway when he was about a quarter of a mile distant; that she went on to the porch of a house, then returned to the right side of the highway and that he slowed the speed of his truck, as he thought that she might run out in front of him. In his sworn testimony on trial Crawford related an entirely different set of facts, for he testified that he stopped at Peters Store, which, as we have above mentioned, was located only 300 feet north of the Jenkins residence, to examine his load; that after he placed his truck in motion and started into the highway he saw the little girl run from the highway, though he was never certain as to her position nor the direction from which she had come, to the porch of the house and return to a point near the highway where she was standing when he passed.
The movements of the little girl immediately prior to the unfortunate accident have not been clearly established. The child herself was only able to testify that she had been to Peters Store on an errand for her mother and had returned to the house immediately before the accident, but she testified she was completely unable to recall anything that followed. The mother testified that she had sent the child to the store and that she had returned to the house, which she left immediately. Zealous counsel for plaintiff urges that the child left the house with the intention of crossing the road in order to go visit a Mrs. Hicks, who lived "a short distance down the road." From the wording of his opinion it is obvious that the trial judge adopted this argument as an established fact. With this we are utterly unable to agree, since such a conclusion rests purely upon an unwarranted inference. It is true the child's mother, Mrs. Jenkins, testified that the child had asked permission that evening to go to visit Mrs. Hicks, but there was nothing to justify the belief that it was for this immediate purpose the child had left her home after returning from the Peters Store. The statement that Mrs. Hicks lived across and "a short distance down the road" is erroneous, for Mrs. Jenkins testified that Mrs. Hicks lived on the east side of the highway about half a mile south of the Jenkins residence. Mrs. Jenkins also testified that there was a highway crossing approximately a quarter of a mile south of the Jenkins residence. We can only regard the conclusion that Dora Marie Jenkins was on her way to visit Mrs. Hicks and that she intended to cross the road before walking the half mile to the south as the purest speculation.
We think the above point is important because if it had been established it would have been indicative of the child's intention of crossing the highway and would have indicated that she was standing at a point near the concrete slab of the highway awaiting an opportunity to cross. But if this were so, the question then arises, why did not Dora Marie cross the road in safety ahead of both the approaching truck and the Albritton car?
In the attempt to resolve this uncertainty we can only conclude that at the time Albritton first observed the child she was returning to her home from Peters Store and he was correct in his impression that she had left the place near the highway in which he had first observed her, later to return to approximately the same position.
There was no circumstance, nor indication, nor suggestion which could or should have warned Albritton that the child might attempt to rush across the highway in the path of his car. Under such conditions we *501 cannot find negligence in his failure to slow his speed or to sound his horn.
While this finding would ordinarily dispose of the matter, we are constrained, because of the serious and tragic implications of a finding adverse to plaintiff's claims, and in an abundance of precaution, to give our consideration to the plea of contributory negligence which has been urged by defendants as an alternative defense. Counsel for plaintiff insistently and eloquently urges the well recognized doctrine that the negligence of a child must be judged in accordance with his experience, age, understanding, development, intelligence and capacity. Admittedly the element of age can not be reduced to an exact factor, but we think it would be dangerous, indeed, to enunciate the proposition that a child over thirteen years of age in this motorized age should not be considered capable of acts of contributory negligence. In these days children of tender years, even without repeated instruction as to the dangers from motor vehicles, are unquestionably aware of such dangers and of the high probability of injury resulting from failure to use reasonable precautions. Counsel cites as his only Louisiana authority in this respect the case of Shalley v. New Orleans Public Service Inc., 159 La. 519, 105 So. 606, as authority for the proposition that even a sixteen-year old youth should not be held responsible for contributory negligence. That was not the holding of the court, since it did not exonerate the injured young man from contributory negligence on the ground of age, but rather because it found there was no contributory negligence in following what was a customary practice for persons riding streetcars.
However, it does appear that there is a reasonably well-defined principle of judicial interpretation with respect to the relationship between contributory negligence and age. In Marquette v. Cangelosi, La.App., 148 So. 88, the court held that a normal boy, thirteen years and two months of age, was guilty of contributory negligence. In O'Pry v. Berdon, La.App., 149 So. 287, the court declared that a twelve-year old boy was subject to the rule of contributory negligence.
We think the Orleans Court of Appeal most appropriately enunciated an important factor in connection with the contributory negligence of children in the case of Fontenot v. Freudenstein, 199 So. 677, 678, when it declared that a twelve-year old boy was negligent in failing to observe an approaching vehicle and further stated:
"* * * and there is nothing to show that he was not of sufficient intelligence to render it proper to say that, as a matter of law, he could be guilty of contributory negligence."
In other words, it appears to us reasonable to assume that a child of twelve years or more, of normal intelligence, is capable of being held answerable to the charge of contributory negligence. The lack of intelligence, or of any other normal quality, is a matter of proof and as such the burden for its establishment must rest upon the party seeking to negate the application of the rule of contributory negligence.
We do not find that there is anything in the record which would justify a finding that the child in question lacked any of the qualities which have been above recited. Counsel attempts to urge that the child was somewhat below average in intelligence and cites the fact that she had at one time failed the fifth grade in school. No circumstances which might have contributed to this incident are established by the record. However, by stipulation, the child's grades for the school year 1953 were placed in the record, ranging from "C" to "A", which, certainly, would not indicate any lack of intelligence, and the testimony of witnesses, including the child's mother, indicates, to the contrary, that Dora Marie was an unusually alert, intelligent child.
Nor do we think it a matter of importance that the child had lived in rural areas prior to the removal of her family to Bossier Parish, for, over a period of nine months, she had lived on the very edge of what is a heavily traveled highway, with *502 every opportunity to observe and to appreciate the dangers from vehicular traffic thereon.
We think the record has completely failed to support the presence or lack of any quality which would justify our finding this child free of the penalty attaching to her own acts of negligence.
As to the circumstances themselves, there can be no possible question of the negligence of Dora Marie Jenkins in suddenly running from behind a passing truck directly into the pathway of an approaching automobile. Indeed, we are not disposed to consider this merely an act of contributory negligence but are convinced that it was an independent act of negligence which was the sole and proximate cause of the unfortunate accident and the resulting injuries.
We are not impressed by the asserted application of the doctrines of last clear chance or discovered peril under the facts of this case. There was no discovered peril and could not have been until the child carelessly, heedlessly, recklessly and negligently, leaving a position of safety, darted out from behind a moving vehicle and into the immediate path of another, which was even then engaged in passing. Nor, under such circumstances, could it possibly be considered that Albritton was accorded any sort of chance to avoid the accident. He performed the only act that was within his power, the immediate and effective application of his brakes.
As we have heretofore observed in this opinion, each case of this character must be determined upon the basis of its own peculiar facts and circumstances. We are convinced that every circumstance and every reasonable inference of fact in connection with the instant case militates against the justification of recovery by plaintiff.
For the reasons assigned the judgment appealed from is reversed and set aside and there is now judgment in favor of defendants rejecting plaintiff's demands at his cost.