McBRIDE, Judge.
Stephanie Ann, the four-year-old daughter of plaintiffs, was struck by an automobile driven by Albert F. Clesi in the 6300 block of Milne Avenue on the afternoon of August 9, 1963, as she was running across the roadway. Plaintiffs brought this suit to recover on behalf of the child damages for the physical injuries she sustained, *554 they also seek to recoup the medical expenses incurred by them. The suit is directed at Clesi and his liability insurer. Clesi is charged with negligence in that he failed to observe the child crossing Milne Avenue, failed to avoid striking her, and failed to have his automobile in a proper state of repair. The defendants deny negligence on Clesi’s part; they filed a third-party demand against plaintiffs seeking contribution as among co-tortfeasors, alleging that if Clesi was negligent so was the mother in that she permitted the child to play in a dangerous position.
After a trial on the merits, there was judgment in favor of plaintiffs for the use and benefit of the child in the sum of $1,-500.00; judgment also went in favor of plaintiffs for $411.75; the third-party demand was dismissed. Defendants have appealed. The appeal has been answered by plaintiffs praying that the judgment for the use and benefit of the child be increased to the sum of $4,500.00.
Milne Avenue is a wide, paved thoroughfare running in a north-south direction bisected by a neutral ground which provides two roadways, one accommodating traffic moving in the direction of the lake, the other being set aside for vehicles traveling in the direction of the river. The accident occurred almost in front of plaintiff’s residence which faces the river-bound roadway.
The evidence, not seriously contradicted by anyone, is that the child ran diagonally into the roadway in front of Mrs. Gag-liano’s parked automobile toward the neutral ground; her path slanted to the right or away from the parked car. The witnesses said she attempted to cross the roadway on “a 45 degree angle.”
Clesi was driving at a speed of between 20 and 25 miles per hour (within the legal limit) in the inner lane of river-bound roadway one foot from the neutral ground curb, and the child was struck just as she had reached a point about a foot or two from the neutral ground, it being an un-controverted fact that the extreme left-hand front portion of the automobile struck the little girl. No one except Clesi testified as to how far the car was from the child when she emerged from in front of the parked vehicle. He stated in discovery depositions that he was only three feet away when she darted out into the roadway. In his testimony on the trial, he claimed the child was 20 feet from him when she came from in front of the parked car, and he could do nothing to avoid running into her. His story is that he im^ mediately applied the brakes and turned the steering wheel to the right. The car skidded and struck the child without making any appreciable swerve to the right. Clesi’s testimony that he saw the child when he was 20 feet away does not coincide with statements he made to the child’s mother immediately after the accident, “I didn’t see her. Honest, I didn’t see her.”
If we could believe Clesi’s testimony, this would be a classic case of sudden emergency where a child without warning darts from behind a parked vehicle into the street in the path of an on-coming automobile the driver of which not being afforded sufficient time and space in which to take effective steps to avoid injury.
But this is no sudden emergency case. There was time for reflection on the motorist’s part. Certain significant physical facts shown by the record contradict Clesi’s testimony. Before reaching the point of impact, the automobile skidded for a distance of 20 feet; after impact it skidded some 40 feet more. The 20-foot skid marks to the point of impact belie Clesi’s statements and lead to the inevitable conclusion that he observed the child from a much greater distance than 20 feet. Patrolman Earl H. Boudreaux, a graduate of the New Orleans Police Academy and experienced in conducting vehicular accident investigations for the local police department, appearing for the defense, was qualified as an expert witness. He testified both from charts and from experience that it is a recognized fact that before application of the *555 brakes, an automobile traveling at 25 miles per hour will travel 28 or 29 feet during reaction time, i. e., the time intervening between the driver’s observation of danger and the locking of his brakes. Boudreaux also testified that the tires on the right side of Clesi’s vehicle left a heavy skid mark, while the tires on the left side made only a light mark or none at all, and this led Boudreaux to the conclusion that the brakes on the car were defective and inadequate, and Clesi possibly saw the child from a greater distance of 50 feet. Clesi denies the brakes were in anywise defective and testified that it was never necessary to have them adjusted and that on subsequent tests for inspection tags the automobile was deemed in good order.
The trial judge seemed to appreciate the case is not free from difficulties. From his reasons for judgment, we quote:
“Was the defendant guilty of negligence? Could he have avoided the accident? The court must frankly state that an affirmative or negative answer to either or both of these questions would be such as to arouse serious debate and a logical opposite view. However, such is the duty of this court that it must make a definite decision with the knowledge that its decision has been reached in good conscience based on its view of the facts and its appreciation of fairness and justice.
“This court, then, finds that the defendant should have seen the child prior to the time that he did first see her, for the child was either walking or running diagonally across a twenty-foot street and she was hit about two feet from the neutral ground. Keeping a proper lookout, it would appear to this court that defendant should have seen the child more than twenty feet away. It further appears to the court that defendant did have an opportunity to avoid the accident by swerving away from the neutral ground. The facts do not indicate any effort on the part of the defendant to . avoid hitting the child, other than his. effort to stop the car.”
 We find no error in this finding of facts. According to Boudreaux’s testimony, the child should have been seen from a distance of at least 50 feet and whereas she was so close to the neutral ground when struck, if Clesi had been a reasonably alert and prudent driver, he could and should, within said distance, have effectively swerved his car to the right or towards the rear of the running child, which maneuver would have resulted in an avoidance of the accident. The car had been traveling along Milne Avenue about one foot away from the neutral ground curb, and when it came to rest after skidding for the 60-foot distance, it was still only a foot away from the neutral ground. Clesi blames the parked automobile, from in front of which the child ran, for preventing a swerving attempt. The roadway is about 20' to. 22' feet wide, and notwithstanding the presence of a parked car, there was enough room to execute a successful swerve. Moreover, the evidence reflects Clesi’s car had already passed the parked automobile and that vehicle could not have interfered. Had Clesi veered even as much as a foot or two, there would have been no untoward result. We must believe, as the trial judge held, that in failing to take any step other than his effort to stop the car, Clesi was guilty of negligence constituting the proximate can^e of the occurrence. A motorist is required to have his vehicle under control at all times, to be vigilant, and to use every reasonable means to avoid an accident.
The award of $1,500.00 in the child’s favor came in for some discussion. The little girl suffered abrasions on her right leg, contusions on the left side of her abdomen and two green stick fractures of the left leg. The cast on the left leg was removed on September 9, a little over a month after the accident, and the child was discharged by her physician, Dr. Howard *556 Mahomer, on October 11, or a little more than two months after the accident Dr. Mahorner testified the bones were in good position and had held in proper alignment. There is no residual.
We think that the amount of the judgment in the child’s favor is adequate, and we see no reason whatever for revising it to any extent. There is no contest regarding the amount allowed for medical expenses, etc.
Nor do appellants complain of the dismissal of the third-party demand; however, the record is convincing that such was proper.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.