SAVOY, Judge.
Plaintiff, Patrick J. Pastor, brought this tort suit for damages individually and on behalf of his minor son, Jude (who was three years of age at the time of the accident) for personal injuries sustained when Jude was struck by a 1964 Ford Ranchero being operated by eighteen-year-old Terry Troussard, in a residential section of Lafayette around S :00 P.M. on February 25, 1966.
Joined as defendants in the action are Terry’s father, Homer Broussard, Sr., the owner of the Ranchero, and Southern Farm Bureau Casualty Insurance Company, insurer of the Ranchero. Plaintiff contended the accident occurred because of the excessive speed of the vehicle; because of the negligence of the driver in not keeping a proper lookout; in failing to sound his horn and take other evasive action; and, in failing to keep the vehicle under his control. Defendants admitted an insurance policy was in force, but denied any negligence on the part of Terry; and expressly averred that the accident was unavoidable, the child darting into the street at a time when the driver could do nothing to prevent the accident. Defendants expressly pleaded the negligence of plaintiff, his wife or other persons to whom the care of the minor child had been entrusted in allowing the child to enter the street unattended. In the alternative defendants pleaded that if and only if they be found guilty of negligence which they denied, then and in that event defendant Southern Farm prayed there be judgment rendered in its favor against plaintiff and his wife jointly, severally and in solido in reimbursement for the full amount of the judgment, or alternatively for contribution of their proportionate share of any judgment rendered in the main demand.
After trial on the merits, the district court rendered judgment in favor of plaintiff and against defendants. From this decision defendants have appealed contending that Terry was not guilty of any negligence whatsoever, and that the accident was unavoidable. Plaintiff has answered the appeal contending the award should be increased.
The record reveals the vehicle was being driven in a northerly direction in the 400 block of Lamar Street which runs generally north and south, and measures slightly over 25 feet from curb to curbing. A vehicle was parked on the shoulder on the west side of the street, and it is from this point that the driver first observed the child enter the street. On the east side of the street prior to the point of impact a large oak tree stood several feet off the traveled portion of the road. The point of impact was approximately one to two feet inside the center of the northbound lane, the child hitting the vehicle about 12 inches from the left front side.
The only witness to the accident was the driver of the Ranchero, Terry Broussard. He testified in substance that he was going from his classes at U.S.L. to his part-time job at Southern Pacific Transport on the day of the accident. The weather was clear and cool, and the street was paved and dry. He stated that Jude had taken about two steps into the southbound lane when he first saw him, and that the speed of his Ranchero was 23 to 25 miles per hour, as he had just previously shifted into third gear. When he first saw the child he slammed on his brakes, causing his vehicle to skid until impact, and even then, his vehicle skidded a short distance further.
*220 Mr. Lovelace Comeaux testified as the investigating officer and stated he was employed by the Lafayette City Police Department on the date of the accident, and had been so employed for some six years prior thereto although he had since resigned from the force. He measured the skid marks of the Ranchero as being fourteen paces, or about 42 feet. He said that the speed limit where the accident occurred was posted at 25 miles per hour. He also found debris inside the skid marks which appeared to have fallen off the Ranchero at the time of the collision, and although he could not state the exact distance of the debris in relation to the skid marks, he did indicate that the debris was located from one to one and one-half car lengths from the rear of the vehicle parked in a southerly direction on the west shoulder of the street.
Nothing else in the record contributed anything of importance to the events leading to the accident except possibly the testimony of Mrs. Arabie. Mrs. Arabie stated she was peeling onions in her house and saw the Ranchero pass at a slow speed. Although she could not state with certainty the exact speed of the vehicle, we think it is significant that the accident took place only two houses distant and tends to corroborate the testimony of Terry that he was proceeding at a slow pace.
Counsel for plaintiff rely upon the case of Gagliano v. Clesi, 169 So.2d 553 (La.App. 4th Cir. 1964), as standing for the proposition that even though a motorist applies his brakes, if the motorist could have avoided striking the child by swerving his vehicle and fails to do so, he is guilty of negligence, Suffice it to say that the court held the defendant should have seen the child at an earlier time, and thus could have missed striking her by a swerving action. This is not true in our case before us.
The law in cases of this type is well-defined to the effect that:
“ * * * a motorist who sees or should see children near the roadside, must exercise a high degree of care in view of the propensity of young children to dart or run into the street, needless of their own safety. This rule implies that when a motorist sees or should see a child near the roadside, he must anticipate that the child might suddenly dart into the street. Consequently, the motorist must bring his vehicle under such control that he can avoid injuring the child, notwithstanding its youthful indiscretion. * * * On the other hand, a motorist is not an insurer of the safety of children playing near the street. If the motorist is proceeding at a lawful and reasonable speed and obeying all of the rules of the road as to proper lookout etc. he will not be held liable where a child suddenly darts or runs into his path from a concealed position in such a manner that the motorist is unable to avoid striking the child. :jc ‡ * >f
See Layfield v. Bourgeois, 142 So.2d 799 (La.App. 3rd Cir.1962) and cases cited therein.
In finding Terry negligent the trial court appears to have placed much reliance upon the fact that the child had to cross some seven feet between the sidewalk and the curb and an additional thirteen or fourteen feet into the path of the vehicle, and also upon the fact that Terry only applied his brakes, not sounding his horn nor attempting to veer his vehicle to the right, away from the child.
The only evidence contained in the record as to when the child was first seen was when Terry said he did not see the child exit from behind the parked car until the child had taken about two steps into the southbound lane. This would mean that the child had only to traverse a distance of some eleven or twelve feet before he was struck by the vehicle rather than some 20 or 21 feet as indicated by the trial court. Further, there is nothing in the record to indicate that the vehicle was being operated recklessly or negligently; and in fact, the evidence would tend to show the exact opposite.
*221 Although it may well be that had Terry sounded his horn or veered his vehicle to the right (assuming arguendo that the presence of the large oak tree would not have prevented such a maneuver) the accident would not have occurred. We believe the situation presented here is one in which the “sudden emergency doctrine” should be applied, and the driver exonerated from any negligence.
In Carter v. Connecticut Fire Insurance Company, 189 So.2d 724 (La.App. 1st Cir. 1966), plaintiff contended the accident could have been avoided had the vehicle been turned to the left upon seeing the boy riding across the highway. The court answered:
“* * * In retrospect, we must agree with that statement. However, it must be remembered that the driver was burdened with the duty of making an instant decision and the emergency which demanded this decision and action was not of her making. We know now from what occurred that some evasive action might have averted the injury, but we cannot hold Miss Boudreaux to the same cool deliberate determination of what might avert the occurrence as we can make of it at this time. She acted reasonably under the circumstances. *
Likewise in Ellender v. Attaway, 186 So.2d 171 (La.App. 1st Cir. 1966), the court, in speaking of the possibility of an avoidance of the accident by veering to the left, stated:
“* * * He. could have turned left in front of the child, but this would have been a proper decision only if he were sure that the child would stop running. Obviously Attaway could not have known that.
“As it happened, the child did stop in the highway in Attaway’s lane of travel. Certainly, however, Attaway had no time to reflect on the courses of action open to him. He did the instinctive and very reasonable thing, he applied his brakes as hard as he could.”
And in McMorris v. Hanover Insurance Company, 175 So.2d 697 (La.App. 1st Cir. 1965), the court said:
“* * * McMorris could only guess whether it was best to apply his brakes forcefully, or whether he should veer to the left in the hope that Finch would have time to clear the left lane. His reaction took the form of one possible evasive measure. He cannot be penalized for not selecting the one which we now believe may have avoided a collision.”
We are of the opinion that the driver acted reasonably when confronted with the sudden emergency.
For the reasons herein set out, the judgment appealed from is reversed, and judgment is hereby rendered in favor of defendants and against plaintiff, rejecting plaintiff’s demands and dismissing the suit at his costs. The costs of this appeal are assessed to plaintiff-appellee.
Reversed.
TATE, J., dissents.