FRUGÉ, Judge.
This is a suit instituted by the appellant, Dennis Herrin, individually, and as natural tutor for his minor son, Mark Herrin, seeking recovery for personal injuries and medi *697 cal expenses resulting from an automobile-pedestrian accident which occurred on August 6,1968. The suit was instituted against Ronald W. Freeman, L. B. Freeman, Sr., and Southern Farm Bureau Casualty Insurance Company, the liability insurer of the Freeman vehicle.
The accident occurred some four car lengths south of the intersection of Masonic Drive and Texas Avenue, in the City of Alexandria. Masonic Drive runs in a general north-south direction and Texas Avenue runs in a general east-west direction. Immediately prior to the accident, about 6:10 p. m., Mark Herrin and his mother were passengers in an automobile being driven by Mrs. Shirley Rabalais. Mark was on his way to Little League practice at one of the diamonds in a park located north and west of the intersection, and was late. As the car neared the intersection, Mrs. Rabalais stopped in a line of traffic in response to a red traffic signal. The Rabalais automobile was the fifth vehicle in this line. Mark got out of the car on the right side, crossed in front of it, and proceeded across the street in a westerly direction. The Freeman automobile struck him near the west edge of the street.
The Freeman automobile was owned by the defendant, L. B. Freeman, Sr., and was being operated by Ronald W. Freeman, age eighteen. Prior to the accident, Freeman had been traveling in a southerly, direction on Masonic Drive. At the time of the accident, it was still daylight and the weather was warm and dry.
In his petition, plaintiff alleged that the accident occurred due to the excessive speed of defendant, his failure to keep a proper lookout, his failure to keep his vehicle under proper control, his failure to sound a warning, his failure to reduce his speed when he saw or should have seen the child crossing the street, and his failure to avail himself of the last clear chance to avoid the accident.
The defendants admitted an insurance policy was in force, but denied any negligence on the part of Freeman. They expressly averred that the accident was unavoidable and that the child darted into the street at a time when the driver could do nothing to avoid the accident. Defendants alleged negligence on the part of the child, and in the alternative, alleged that if and only if they be found guilty of negligence, plaintiff’s son was contributorily negligent.
At the trial on the merits judgment was rendered by the court rejecting the demands of plaintiff and dismissing the suit at his cost. Plaintiff entered a devolutive appeal to this court.
As to the particulars of the accident, the disputed elements concern speed, distance, and timing. It was admitted or proved that Masonic Drive is eighteen feet wide with a painted stripe dividing the roadway into two lanes each nine feet wide. The speed limit in the area was thirty-five miles per hour.
Defendant, Ronald Freeman, testified that he was driving south on Masonic Drive and seeing that the light at Texas Avenue was red, he took his foot off the accelerator and coasted at five to ten miles per hour. The light changed to green when he was about thirty yards distance from it and he then gradually accelerated to approximately fifteen miles per hour in the intersection. He is certain that he was not driving over twenty-five miles per hour when he applied the brakes upon seeing the child undertaking to cross his lane ahead of him. As he passed through the intersection, the string of approaching traffic was still stationary as the lead vehicle, a truck, was waiting to make a left turn into Texas Avenue. Defendant testified that when he reached a point some sixty feet south of the intersection, he saw plaintiff’s son, Mark Herrin, come out from behind a parked car, the fourth vehicle in the string of cars. Mark was then in the northbound lane of traffic, about one foot east of the center line. At this time, the front of defendant’s automobile *698 was about even with the front of the third stationary vehicle, Mark being seven and one-half steps or roughly twenty-three feet distant from defendant’s automobile. Defendant observed that Mark was moving in a loping run, or about half-speed. Mark became aware of his dangerous situation, increased his speed and finally leaped into the air just before he was struck — the impact occurring about three feet from the west edge of the street pavement.
The defendant testified that he applied the brakes as forcefully as possible, but that the vehicle skidded to the point of impact. His automobile stopped in its proper lane, and with its front even with the front door of the fifth vehicle in the north lane of traffic. He admitted that he did not sound his horn or try to swerve to his right, but claimed he had no time for such actions, and that Mark was moving in the direction he might have swerved to. He further testified that there were no children on the street, sidewalks or shoulders, but that there were some playing in the ball park on the northwest corner of the intersection.
The police officer who investigated the accident testified that he found approximately twenty-four feet of skid marks left by the defendant’s vehicle. By the length of the skid marks and through the testimony of other witnesses to the accident, it was determined that defendant’s vehicle was traveling a minimum of twenty-two miles per hour and a maximum of twenty-seven miles per hour' — the speed limit being thirty-five miles per hour.
Plaintiff’s son, Mark Herrin, aged eleven at the time of the accident, related that while the Rabalais car was stopped, he and his mother decided he would alight there and cross the street, rather than stop at the crosswalk. He got out on the right side of the automobile and while doing so, observed that the light was red. He then crossed in front of the Rabalais car, and before proceeding into the street, looked again and saw the light was still red. When he was a couple of steps into the west lane, he saw the light had turned green and he began to run. About the middle of the west lane, he first saw the car approaching but not “real close”. When he was about four steps past the center line, the car was “fairly close”, about one or one and one-half car lengths away. He then started running and watched the car until he was struck. When he realized that- he was about tó be struck, he “dove up and over to get out of the way”, but was hit, then being about two feet from the west edge of the pavement. He stated that, “The first time I saw the car it was closer than I thought, I guess”.
The trial court found that the defendant had neither the time nor the opportunity to avoid the collision, or by the exercise of any evasive measure, could he have prevented it. The court ruled, that admitting for the purpose of argument, the defendant was negligent as per all allegations of the plaintiff, that the plaintiff’s son, Mark Her-rin, was contributorily negligent and that the Doctrine of Last Clear Chance was not applicable.
The testimony of the witnesses in this case, when considered as a whole, does not change the factual situation as denoted by defendant and Mark Herrin, except that in defendant’s favor it could be said that a preponderance of the evidence revealed that the light did in fact turn green just prior to Mark Herrin’s entering the west lane or shortly thereafter. This would put defendant in the position given by him of approximately one to one and one-half car lengths away from Mark Herrin when he entered defendant’s lane of traffic.
It is a well known rule that the factual determinations of the trial court, particularly when based upon evaluations of the credibility of the witnesses, should not be disturbed on appeal unless manifestly erroneous. Lewis v. Liberty Mutual Insurance Company, 215 So.2d 138 (La.App. 3d Cir., 1968), and citations therein.
*699 The law in cases of this type is well-defined to the effect that:
“ ‘ * * * a motorist who sees or should see children near the roadside, must exercise a high degree of care in view of the propensity of young children to dart or run into the street, heedless of their own safety. This rule implies that when a motorist sees or should see a child near the roadside, he must anticipate that the child might suddenly dart into the street. Consequently the motorist must bring his vehicle under such control that he can avoid injuring the child, notwithstanding its youthful indiscretion. * * * On the other hand, a motorist is not an insurer of the safety of children playing near the street. If the motorist is proceeding at a lawful and reasonable speed and obeying all of the rules of the road as to proper lookout, etc. he will not be held liable where a child suddenly darts or runs into his path from a concealed position in such a manner that the motorist is unable to avoid striking the child. * * * f a
See Layfield v. Bourgeois, 142 So.2d 799 (La.App.3d Cir., 1962) and cases cited therein; and Pastor v. Southern Farm Bureau Insurance Company, 215 So.2d 218 (La.App.3d Cir., 1968).
Plaintiffs cite and rely on the following authorities in support of the allegation that the defendant saw and observed children gathering in the ball park and therefore should have exercised the duty called for in the general rule previously cited. Stamps v. Henderson, 25 So.2d 305 (La.App.2d Cir., 1946); Danna v. London Guarantee and Accident Co., 147 So.2d 739 (La.App.2d Cir., 1962); Layfield v. Bourgeois 142 So.2d 799 (La.App.3d Cir., 1962).
After a close reading of these cases, we feel that they are easily distinguishable from the facts at hand. In the Stamps case, supra, the defendants had the full view of the child standing alongside the roadway for a distance of approximately a quarter of a mile, and the court noted that the operator of the vehicle had had time to bring his vehicle under control and avoid the collision, regardless of the sudden action on the part of the child.
The case of Danna v. London Guarantee and Accident Company, 147 So.2d 739 (La.App.2d Cir., 1962), is easily distinguished from the facts at hand. There the evidence revealed excessive speed on the part of the defendant driver, and a failure to keep a proper lookout and observe the movements of the child riding a bicycle. The accident occurred in an area that was densely populated and where children were playing in and around the streets.
As to the case of Layfield v. Bourgeois, 142 So.2d 799 (La.App.3d Cir., 1962), a reading of the opinion would favor more the position of defendants. The plaintiffs in that case had alleged, as here, excessive speed and failure to observe the movements of the child. The accident involved a five year old child being struck by an automobile going fifty to sixty miles per hour— the child having darted out of a ditch next to the roadway. The court ruled that the speed was not excessive and that the sole proximate cause of the accident was the action of the child in darting from the ditch. The defendant being unable to observe the child in time to take evasive action or to avoid the accident, no liability was incurred.
The plaintiff attempts to condemn Mr. Freeman for being at the point of impact before the vehicles in the north bound lane began moving forward. Plaintiff theorizes in his brief that given the time, distance, and speed of defendant’s vehicle and of the plaintiff’s son, it would have been impossible for defendant to be in the position of the point of impact unless he had run the red light.
This theory was not accepted by the lower court and as well, we give little merit to it. Mr. Freeman testified that there was a vehicle waiting to turn left at the intersection and this evidence is uncontradicted in the record. He further testified that he *700 had not stopped at the light. Rather, he had simply slowed down, and when the light turned green, proceeded forward accelerating slightly until he became aware of the presence of the child crossing the road, at which time he slammed on the brakes.
Plaintiff also attempts to condemn Mr. Freeman for failing to turn to his right or to sound the horn in an attempt to warn the child. In the recent decision of Pastor v. Southern Farm Bureau Insurance Company, 215 So.2d 218 (La.App.3d Cir., 1968), Judge Savoy, as the speaker for this court, considered a similar allegation. The court cited the cases of Carter v. Connecticut Fire Insurance Company, 189 So.2d 724 (La.App.1st Cir., 1966), Ellender v. Attaway, 186 So.2d 171 (La.App.1st Cir., 1966) and McMorris v. Hanover Insurance Company, 175 So.2d 697 (La.App.1st Cir., 1965), as authority for the principle that in a situation such as we have here, in which the “sudden emergency doctrine” should be applied, the driver may be exonerated from the duty to warn or to take evasive action if he had no time to consider such action prior to the time of impact.
Given the short time that Ronald Freeman had to become aware of the presence of Mark Herrin and to take action, we feel that it would be illogical to hold that he as well should have considered giving a warning. The defendant actually had his hands full in simply trying to avoid contact.
As to the allegation that Mr. Freeman could have avoided the accident by swerving to his right and going on the shoulder of the road, we note that the boy was running toward the defendant’s right and that had Mr. Freeman turned to the right, then he would have headed in the boy’s direction, and assured contact.
The weight of the evidence establishes that Mr. Freeman was driving substantially below the speed limit. He was able to observe Mark as soon as it was possible for him to do so. He testified that he saw Mark when Mark was only one-half foot west of the car behind which he had appeared. He could not see Mark prior to that time, because Mark was obscured by the top and trunk of the vehicle in front of that from which he had disembarked. He estimated he was about seven and one-half steps or one and one-half car lengths from Mark when he saw him. This was also testified to by two of the eyewitnesses, Gary McKay and Sandra K. Kule, both of whom were in their vehicles stopped behind the Rabalais vehicle.
The south bound traffic lane was nine feet wide. Ronald Freeman saw Mark when he was approximately one foot east of the center line. Mark was struck at a point four and one-third feet from the west edge of the street. This means that Mark traveled approximately six feet from the time that he came into view, to the time he was hit. Mr. Heard, an expert, estimated that the average child walks seven feet per second. This means that running, he could have traveled this distance in one second or less. The average reaction time is three-fourths of a second. Thus, Ronald Freeman had a maximum of one-fourth of a second to avoid striking the boy.
With these facts, we feel this case demands the application of the “sudden emergency” doctrine and a declaration that the accident was unavoidable. The defendant Ronald Freeman is absolved of any responsibility for the accident.
Having found the absence of negligence on the part of the defendant, Ronald Freeman, this court finds it unnecessary to discuss the question of contributory negligence or last clear chance, save to say that the opinion of the trial court which discussed such issues revealed no error.
For the foregoing reasons, the judgment of the trial court in favor of defendants and dismissing plaintiff’s action at their costs, is hereby affirmed. All costs to be paid by plaintiff-appellant.
Affirmed.