FRUGÉ, Judge.
This is an appeal from a jury verdict denying the plaintiff, Gus W. Schram, Jr., medical expenses, and on behalf of his minor son, Mark Schram, damages resulting from an automobile-pedestrian accident. The suit was instituted against Clarence Castille, now deceased, driver of the 1960 Pontiac automobile involved in the accident. The automobile was owned by Harold H. Whitley and was insured by Allstate Insurance Company. Also made defendant was the National Guaranty and Deposit Insurance Corporation, the liability insurer of Clarence Castille.
On Thursday, January 20, 1966, at approximately 5:30 p. m., plaintiff’s minor son, Mark Schram, then five years old, and three other children were engaged in fying a kite in a vacant lot east of Louisiana Avenue near Cherry Hill Subdivision in Lake Charles, Louisiana. Mark, Danny Perry and Alan Perry were with Donald Perry, who was actually flying the kite, when they decided to proceed across Louisiana Avenue to go to another vacant lot where another child, “Harry”, was flying a kite. Danny Perry actually crossed the street, but when Mark and Alan attempted to cross, Mark was struck by the northbound automobile being driven by Clarence Castille, the impact causing the child severe injuries.
The point of impact between plaintiff’s son and Castille’s automobile was near the center of Louisiana Avenue at its intersec *231 tion with Cherry Dale Street. At the time of the accident, Cherry Dale was an unimproved street, there existing only the rounded curbs and a sign post to indicate where the street would eventually be located. Louisiana Avenue was a normal, north-south, two-lane thoroughfare, bordered on the west by residential homes and the planned street, and on the east by the vacant lot mentioned previously. Paralleling the entire eastern edge of Louisiana Avenue, a few feet therefrom, were a series of large, highline utility poles, owned and installed by Gulf States Utilities Company. Since the date of the accident, but prior to trial, Louisiana Avenue was widened, and Cherry Dale Street was completed, but the location of the utility poles was not changed.
The facts surrounding the accident are somewhat in dispute, both plaintiff and defendants contending that the evidence supports their respective interpretations.
Plaintiff alleges that at the time that the children made the decision to cross Louisiana Avenue, Castille had already made the turn off West McNeese Street, a street forming a T-intersection with Louisiana Avenue some six hundred feet south of the point of the accident, and was then proceeding in a northerly direction, towards the scene of the accident. He alleges that from the time the children left Donald, the kite flyer, until the accident, that they ran without stopping into the street. He says that according to Officer Melancon, the investigating officer, Mr. Castille admitted having seen the children, and admitted that he did not slow down or apply his brakes until just before the point of impact. With those facts he contends that Castille must be held to have been negligent in the disregard for the children’s safety, and that this negligence was the sole proximate cause of the accident.
The defendants’ case rests strongly on the presence of the large utility poles mentioned earlier. They allege that after the decision was made by Mark and two of the Perry boys to cross to the west side of Louisiana Avenue, the oldest of the group, Danny Perry, ran towards the street, crossed it to the west, and stopped on the sidewalk to wait for his brother and the plaintiff’s son. Mark and Alan, following behind, ran up to the grassy area between the sidewalk and the street and then stopped at a point immediately to the north of and behind a large utility pole directly opposite Cherry Dale Street. The utility pole, as evidenced by photographs in the record, was larger than the usual size and measured four feet, two inches in circumference, with a diameter of fourteen inches. It was after Danny Perry had crossed and stopped, allege defendants, and while Mark and Alan were arriving at the point behind the pole, that Castille turned onto Louisiana Avenue from West McNeese Street. When he reached a point a few feet south of the said utility pole, behind which Mark and Alan were hidden from his view, both children suddenly darted out into the street in a northwesterly direction across the street. Castille, although driving slowly, immediately applied his brakes and veered to the left but all to no avail. The right front of his automobile was struck by or struck the plaintiff’s son.
They allege that Castille had seen some children, but that they were Danny on the west side, and Donald flying the kite. They contend that it was Castille’s concern for Danny that caused him to be driving so slowly, but as well, that caused him not to concentrate on what he could possibly have seen hiding behind the utility pole. All things considered they allege, and the jury apparently agreed, that Castille did all that could be expected of him to prevent the occurrence of the accident.
After submission of the case to the jury, said jury having been requested by plaintiff, verdict was rendered for the defendants, with judgment dismissing plaintiff’s suit at his cost following.
The prime issue before this court is whether there is sufficient evidence in the *232 record to sustain the jury’s findings, keeping in mind the rule that the factual determinations of the jury, particularly when based upon evaluations of the credibility of the witnesses should not be disturbed on appeal unless there is found manifest error. Herrin v. Southern Farm Bureau Casualty Insurance Company, 217 So.2d 696 (La.App.3d Cir., 1969); Lewis v. Liberty Mutual Insurance Company, 215 So.2d 138 (La.App.3d Cir., 1968), and citations therein.
Having stated the general facts and the contentions of the parties, we proceed to a discussion of the evidence and the law upon which the jury could have found the defendant innocent of a breach of the duty imposed upon him by law in such circumstances.
The law in cases of this type has been well defined to the effect that:
“* * * a motorist who sees or should see children near the roadside, must exercise a high degree of care in view of the propensity of young children to dart or run into the street, heedless of their own safety. This rule implies that when a motorist sees or should see a child near the roadside, he must anticipate that the child might suddenly dart into the street. Consequently the motorist must bring his vehicle under such control that he can avoid injuring the child, notwithstanding its youthful indiscretion. * * * On the other hand, a motorist is not an insurer of the safety of children playing near the street. If the motorist is proceeding at a lawful and reasonable speed and obeying all of the rules of the road as to proper lookout, etc. he will not be held liable where a child suddenly darts or runs into his path from a concealed position in such a manner that the motorist is unable to avoid striking the child.”
See Layfield v. Bourgeois, 142 So.2d 799 (La.App.3d Cir., 1962) and cases cited therein; Pastor v. Southern Farm Bureau Insurance Company, 215 So.2d 218 (La.App.3d Cir., 1968) and Herrin v. Southern Farm Bureau Casualty Insurance Company, supra.
Of the witnesses in the case, there were two eye witnesses, Mr. and Mrs. David Bordelon, the three Perry children, and the plaintiff’s son.
The testimony of the children, given on behalf of plaintiff, is somewhat conflicting, but that is understandable in view of the time span since the accident and of their young age. A summary of their testimony, with the exception of that of Mark Schram, seems to substantiate certain of the defendants’ allegations. Danny, Alan, and Donald Perry testified that Danny did reach the other side of the street prior to the entrance on Louisiana Avenue by Cas-tille’s automobile, and that Alan and Mark did stop in a position, from Castille’s point of view, behind the utility pole located on the east side of Louisiana Avenue. None of these witnesses were able to give any substantial testimony as to the speed of defendant’s automobile, however, or as to the length of time between the various actions taken.
The testimony of Mark differed from that of his three friends. Mark said that he and Alan ran from the time they left Donald and did not stop until the point of impact.
The defendant’s witnesses, Mr. and Mrs. David Bordelon, were the only eye witnesses other than the children. Mr. Borde-lon testified that while he was driving south on Louisiana Avenue he witnessed the actual collision, but could not testify as to what happened before the accident, or as to the speed of Castille’s vehicle. Mrs. Bordelon, on the other hand, first observed the children when they were in the area around the telephone pole and she saw them run towards the street. Neither of the witnesses observed Danny Perry allegedly situated at that time on the west side of the street, nor did they see Donald Perry in the vacant lot to the east. Mrs. Bor- *233 delon did observe Castille’s vehicle just prior to the accident. She was positive in her testimony that it was traveling at a very slow speed, in the neighborhood of ten to fifteen miles per hour. She based this not only on her observation of the speed prior to impact, but also on the short stopping distance required. She noted Castille’s action in the following testimony:
“A. Well, he veered into the left lane. He seemed to be going very slow, from what I could see, and it looked like he was avoiding them by going into the left lane.
“Q. Did that car come to a stop?
“A. It was traveling very slow and when the child was hit, he stopped.”
After consideration of the record, we feel that there is sufficient evidence to support the jury finding, especially in view of the factual circumstances that we glean from the record. All four of the children were flying the kite relatively near the sidewalk, post and the street. Danny left the group, crossed the street, and then stopped. At the same time that Castille entered upon Louisiana Avenue, Mark and Alan, following behind Danny, arrived at a position, from Castille’s point of view, immediately to the north of or behind the utility pole. This pole, the evidence in the record establishes, was of sufficient size to either completely hide both children from his view, or sufficient to distort any view of the children. Presumably the children noticed the car, and during a period of indecision of whether or not to cross, Cas-tille’s vehicle was able to proceed up to the point of impact. Erroneously judging the distance of the automobile to be less than it was, plaintiff’s son, Mark, and Alan evidently dashed into the street, and although Alan Perry was able to stop, Mark was struck by the automobile.
We believe that the defendant did not see Mark and Alan, but that he did see Danny and Donald, and he was therefore proceeding at a very slow speed, presumably on the watch for just what happened. But concentrating on Danny on the left side of the street, he was made less aware of the presence of Mark and Alan behind the telephone pole. Going at the slow speed that he was, he attempted to swerve to the left to miss Mark, but nevertheless Mark ran into the automobile. Castille then stopped his automobile a very short distance therefrom.
We have studied the cases cited to us by the plaintiff, and as well after our own research, we cannot find but that Castille’s actions constituted complete compliance with the duty imposed upon him by the often quoted principle of law noted earlier. This accident was most unfortunate, but under the facts, was unavoidable. As has often been noted in cases such as these, “the sole cause of the accident was the act of the child.”
Having found the defendants free of any responsibility to the plaintiff, we hereby affirm the judgment of the trial court. Costs to be paid by the plaintiff-appellant.
Affirmed.