REID, Judge.
This is a suit by the mother and father of six year old Banny Joseph Guidry seeking to recover damages in the sum of $116,500 in favor of the father, Percy J. Guidry, and in the sum of $115,000 in favor of the mother, Eule Marie Guidry, for, the death of their minor son who was killed while attempting to cross a Louisiana highway. The defendants named in the suit are Golden Oil Company, Inc., owner of the vehicle which struck the minor child, the Commercial Union Insurance Company of New York, public liability insurer of said corporation, and Theodore J. Martin, Jr., driver of the truck.
Plaintiffs allege that on or about June 27, 1967, at approximately 1:45 P.M., their minor child was crossing Louisiana Highway No. 1 in front of his home in Golden Meadow, Louisiana, and when he reached about midway of said highway he was struck by a 1967 Dodge truck owned by Golden Oil Company, Inc. and at the time driven by Theodore J. Martin, Jr. They further allege that the highway is a paved two-lane street proceeding generally north and south; that at the point of the accident the said highway is straight, with no obstructions to view, and in a thickly populated area where children are usually and customarily playing and were playing on the date of the accident. The petition avers that at the time of the accident the truck being driven by Theodore J. Martin, Jr. was traveling at a rapid rate of speed, proceeding in a southerly direction on said Highway No. 1.
The answer filed on behalf of the three defendants denied that the accident occurred within the limits of the City of Golden Meadow and alleged the accident occurred a few miles south of the limits of Golden Meadow. It was admitted that the minor was crossing Louisiana Highway No. 1, but averred that the minor darted from the rear of a vehicle parked in the northbound lane of said highway and ran directly in front of the oncoming vehicle in such a manner that said Theodore J. Martin, Jr. was unable to see the minor child until he was in the roadway in defendant driver’s lane of travel. Defendants admitted the collision between the minor child and defendant oil company’s vehicle resulted in the immediate death of the minor child, but urged that the accident was unavoidable insofar as Theodore J. Martin, Jr. was concerned in the operation of his vehicle and that said Martin was traveling at a reasonable and prudent rate of speed in the proper lane of travel , and did not and could not see the child until he ran from behind a parked vehicle in the immediate path of the defendant vehicle when the said vehicle was right upon the minor child and unable to avoid the collision, notwithstanding all reasonable efforts. Defendants further allege in the alternative that the child was allowed to run into the highway in the path of the defendant vehicle by his teenage brother, Percy Guidry, Jr., and that Percy Guidry, Jr. was negligent in allowing the boy to run in the road without supervision, and that this negligence is imputed to Percy Joseph Guidry and Eule Marie Guidry, acting as a complete bar to any recovery by plaintiffs in the event it should be found that defendant driver was negligent.
This case was tried on February 11, 1969, and on that day the trial Judge rendered judgment in favor of the defendants Golden Oil Company, Inc., Commercial Union Insurance Company of New York and Theodore J. Martin, Jr., dismissing the claims of the plaintiffs, Percy Joseph Guidry and Eule Marie Guidry, at their cost. Judgment was read and signed the following day, February 12, 1969, and the plaintiffs appealed therefrom.
The appellants set forth the following specifications of error, to-wit:
1. The trial Court erred in failing to find defendant driver guilty of negligence proximately causing the accident as a consequence of this failure to keep a proper lookout.
*110 2. The Court erred in failing to hold that defendant driver owed a duty of extraordinary care in view of the presence of children at the roadside and that defendant driver breached such duty.
3. The trial Court erred in failing to render judgment in favor of plaintiffs, and in failing to award damages to plaintiffs for the death of their minor child.
We will take these specifications of error up in the order in which they are set out, the first being that defendant driver was negligent as the consequence of his failure to keep a proper lookout, which negligence proximately caused the accident.
The accident happened on Louisiana Highway No. 1, south of Golden Meadow, in open country, where the speed limit is 50 miles per hour for trucks and 60 miles per hour for automobiles. The highway there runs north and south and is a two-lane paved road. On the east side there is open marsh land abutted by Bayou La-fourche paralleling the roadway. On the west side there are some houses that sit back from the road, estimated at 40 to 45 feet from the road.
The testimony shows that appellee’s driver approached the scene at a speed of approximately 45 miles per hour. This is borne out by the testimony of the investigating officer and by the testimony of the driver of the defendant truck, Theodore J. Martin, Jr. As he approached the scene of the accident he was traveling south, headed from Golden Meadow to Grand Isle. The truck driven by Martin, and owned by defendant Golden Oil Company, Inc., was a 1967 Dodge model and was denominated a 10-ton truck. It was loaded with oil drums which the driver was taking to Grand Isle.
As Martin approached the scene of the accident he noticed a blue and white pickup truck, which proved to be owned by Cleophas Lee, parked on the opposite side of the highway, or the bayou side of the highway, facing north. The right-hand door of the truck was opened and a teenaged boy, who proved to be Percy J. Guid-ry, Jr., sometimes called Picu, had the door opened on the right side and was evidently talking to Mr. Lee, the owner and driver of the pick-up truck. Mr. Lee was related by marriage to the plaintiffs in this suit. It was testified that Mr. Lee had picked the two boys up and was bringing them home, and that the little boy, Banny, was sitting in the middle of the truck between Mr. Lee and Picu Guidry. When the Lee truck got opposite or almost opposite the driveway of the plaintiffs he stopped the truck on the bayou side of the highway and let the two boys out. The elder boy got out first and, according to his testimony, turned to thank Mr. Lee for bringing them home. The little boy, Banny, came out behind him and started around the truck. There is a conflict of testimony between Mr. Lee, Picu and the driver of the defendant truck as to whether or not the pick-up truck was moving or standing still. Martin testified that the truck was standing still, while Picu Guidry and Lee testified that it was moving. In fact Lee said that he had gone some 50 or 75 feet up the highway when he heard the squealing of the brakes and the thud of the contact. However, Martin’s testimony is corroborated by two employees of the power company who were up on a pole in a position to see the accident. They stated that the Lee truck was either parked or barely moving off.
Martin was traveling within the speed limit and had no reason to believe that there was anything unusual going on ahead which would necessitate any more caution than he displayed, which was to slow his speed to some extent. He got almost to the back of the Lee pick-up truck when, as he stated, the little boy ran out in front of him and he applied his brakes. He struck the boy a little left of the middle of the southbound lane of Highway 1, killing him instantly. The boy was picked up by his *111 brother Picu, who together with his mother and relatives took the boy to the hospital where he was pronounced dead on arrival. In this connection, the testimony of plaintiffs’ witness, Picu Guidry, is that the little boy started running across the road. The truck skidded some 40 or 45 feet, or at least there were skid marks to this extent, turned over once or twice and landed in the ditch some 100 or 125 feet farther on. Martin, the driver, was injured although not seriously.
The trial Judge in his reasons for judgment dictated into the record found:
“ * * * The Court is convinced that Banny came out from behind that truck and he was running and Mr. Martin could not take any evasive action because he did not know that an accident was about to happen. The only evasive action that he took was to put on his brakes, which accounts for the forty-five feet of skid marks testified to by the trooper.”
The Court further found that this was an unavoidable accident and that the appellants did not show that the driver of the appellee’s truck was driving his vehicle in an excessive rate of speed or improperly. He did not see the small boy when he jumped from behind the rear of the parked truck until he was right upon him.
We believe that the case of Ellender v. Attaway, 186 So.2d 171, La.App., 1st Cir., is in point. In that case we held as follows :
“The law of this State is too clear to require citation of authority that a driver is not guilty of negligence when confronted with a sudden emergency not of his own making, provided he reacts as well as could reasonably be expected under the circumstances. * * *”
The trial Judge found that the driver here had so acted and we do not find that his finding of facts was manifestly erroneous in this respect.
The second specification of error is that the Court erred in failing to hold the defendant driver owed a duty of extraordinary care in view of the presence of children at the roadside and that defendant driver breached such duty.
There is some testimony in the record that some of plaintiffs’ other children were playing in the front yard. There is no question but what the law is positive about the high degree of care owed by a driver of a vehicle approaching a neighborhood where children are playing or habitually play. This is set forth in the case of Pastor v. Southern Farm Bureau Insurance Company, La.App., 215 So.2d 218. This case held as follows, to-wit:
“The law in cases of this type is well-defined to the effect that:
“ ‘ * * * a motorist who sees or should see children near the roadside, must exercise a high degree of care in view of the propensity of young children to dart or run into the street, heedless of their own safety. This rule implies that when a motorist sees or should see a child near the roadside, he must anticipate that the child might suddenly dart into the street. Consequently, the motorist must bring his vehicle under such control that he can avoid injuring the child, notwithstanding its youthful indiscretion. * * * On the other hand, a motorist is not an insurer of the safety of children playing near the street. If the motorist is proceeding at a lawful and reasonable speed and obeying all of the rules of the road as to proper lookout etc. he will not be held liable where a child suddenly darts or runs into his path from a concealed position in such a manner that the motorist is unable to avoid striking the child. * * h=> »
See Layfield v. Bourgeois, La.App., 142 So.2d 799.
*112 The testimony is very conflicting as to the presence of these children along the roadway. In addition to the investigating officer who said he found no such evidence, a Jacqueline Guidry, a niece of the plaintiffs, and who should have been in the best position to know about the children, testified that there had been some children in the yard some 15 or 20 minutes before the accident, but that at the time of the accident the children were all in the house. Also, another niece of the plaintiffs, Linda Gail Guidry, testified that several minutes before the accident the children were in the yard but that she was in the house at the time of the accident and she did not remember where the children were at the time of the accident.
One of the appellants herself, Mrs. Eule Marie Guidry, testified that a rain was approaching and as she went out to put the car in the carport she ordered the children to take the clothes off of the line where they were hanging and bring them into the house. She testified that none of the children were out along the side of the road when the accident happened, and further that she would not let them play out by the road.
Another witness for the plaintiffs, one Earl T. Lirette, who was one of the power company employees, testified that he saw some children around a table eating watermelon and that the table was back some little distance from the highway.
The trial Judge in his reasons for judgment concluded as follows:
“ * * * Jacqueline Guidry said that there were no children in the yard when Banny was hit. She said that the children had not been in the yard for fifteen • or twenty minutes. She was in the house folding clothes, but she was thoroughly interrogated and the ultimate result was that there were no children in the yard. Then came the testimony of Linda Gail Guidry and then she eventually and then repetitively stated that she didn’t remember whether the small children were in the house at the time of the accident. She just didn’t know. According to Lirette, they were sitting around the table eating watermelon. They were not close enough to the road for me to say that we must must now invoke the rule that the presence of small children in the vicinity requires a greater degree of care on the part of the approaching automobile driver. The Court cannot interpret ‘in the vicinity,’ to mean in this case that the children were close enough to have attracted Mr. Martin’s attention to the point where he was burdened with a degree of care greater than that usually imposed on the driver. His own testimony was that he slowed down. I don’t know whether he slowed down because he saw these conical markers that were referred to in the statement by Mr. Rasmussen or not, but he slowed down because there were trucks parked there and he evidently saw men working. Then he was confronted with the situation whereby a small child runs out from some place, and in the Court’s opinion it was from behind the parked automobile, from behind an automobile that had either parked or just started to move and there was nothing that Mr. Martin could have done to avoid this accident.”
With this finding of fact by the trial Court were are in accord.
The third specification of error is that the trial Court erred in failing to render judgment in favor of plaintiffs. We feel that this is taken care of by our comments regarding the other two specifications of error.
For the above and foregoing reasons, we find no error on the part of the trial Judge in his decision herein, and the same is hereby affirmed at the cost of the appellants.
Affirmed.