SCHOTT, Judge.
Plaintiff appeals from a dismissal of his suit for damages growing out of an accident in which his six year old son, Jeffrey, was struck down by an automobile operated by James P. Fox.
The accident happened on a clear Saturday afternoon in a residential subdivision on Ridgeway Drive in Metairie. Defendant was proceeding north at 20 miles per hour, the legal speed limit in the area, and he observed on his left a number of small children playing on the lawn in front of plaintiff’s home. He also observed someone who appeared to be cutting grass on his right side of the street, and as he proceeded past this area he heard a thud on his automobile whereupon he stopped and found that he had struck young Jeffrey.
The evidence is clear to the effect that just before the accident Jeffrey was in the driveway adjacent to the house directly across the street from his house, engaged in a conversation with Ellis Vliet, Jr., who *340 was operating a grass edger on the driveway between the sidewalk and the street. Jeffrey suddently entered the street from Fox’s right and was struck with the right front corner of Fox’s áutomobile about five feet from the curb.
The trial court in reasons for judgment found that:
“. . . the evidence is not positively clear as to whether or not the child was obscured from the motorist’s vision by the young man using the grass edger. The evidence is clear that the child did run into the street from defendant’s right and collided with the right front fender of defendant’s car .
“The court is of the opinion that the evidence militates in favor of defendant. Defendant was proceeding at a lawful speed and had no reason to suspect that a child would dart out from his right. The other children which were seen by defendant- were to his left and some distance away. This is not sufficient to give the average motorist knowledge that a child will dart out from the right-hand side of the street without further warning to the motorist. The child was engaged in placid inactive conversation with the young man who was edging the grass prior to his darting out into the street.”
A restatement by this Court of applicable principles is found in Burfict v. Trosclair, 254 So.2d 640 (La.App. 4th Cir. 1971):
“The rule is well established that an automobile driver is not an insurer of the safety of small children. When driving at a lawful and reasonable rate of speed and obeying the rules of the road, a driver will not be held liable where a child suddenly runs into his path from a concealed position in such a manner that the motorist cannot avoid striking the child. Clearly each case must be considered on the particular circumstances involved. (Citations omitted)
“We recognize that the rule is different, however, when the motorist sees or should have seen the child near the street. In that situation a motorist is charged with knowledge that children playing or walking along the street may unexpectedly or unpredictably leave a position of safety for one of peril. Under these circumstances a motorist is held to a high degree of care, in fact, the highest degree of care. (Citations omitted)
“The court in Campo v. Vampran, 183 So.2d 57, 61 (La.App. 1st Cir. 1966) stated :
“ ‘The duty to exercise greater than ordinary care to avoid injury to a child does not become operative or exist in favor of such child until his presence is known or should have been known under the existing facts of the particular case to the operator or driver of a motor vehicle. The motorist, upon discovering the presence of children in his path of travel or in a position where they could become imperiled, is under a duty to exercise the highest degree of care to avoid injury to them. Each case must be adjudged on the facts peculiar to it. No one case is absolutely controlling of another, as few cases are identical factually.’ ”
Our examination of the jurisprudence shows that in practically every case where a defendant motorist was exonerated from negligence in striking a child there was proof by the motorist that the child had emerged from a concealed position. Young v. Lee, 290 So.2d 922 (La.App. 1st Cir. 1974); Chappetta v. Jones, 237 So.2d 435 (La.App. 4th Cir. 1970); Anderson v. Janes, 234 So.2d 238 (La.App. 2nd Cir. 1970); Morgan v. Travelers Insurance Company, 224 So.2d 484 (La.App. 3rd Cir. 1969); James v. Maggio, 223 So.2d 699 (La.App. 4th Cir. 1969); Schram v. Castille, 223 So.2d 229 (La.App. 3rd Cir. 1969); Herrin v. Southern Farm Bureau Casualty *341 Ins. Co., 217 So.2d 696 (La.App. 3rd Cir. 1969) ; Danos v. Central National Insurance Co. of Omaha, 211 So.2d 106 (La. App. 1st Cir. 1968), and Bryan v. Durr, 209 So.2d 548 (La.App. 4th Cir. 1968). Concerning this issue in his reasons for judgment, the trial judge said only that “the evidence is not positively clear as to whether or not the child was obscured from the motorist’s vision by the young man using the grass edger.”
Before addressing ourselves to the evidence on the obstruction of Fox’s view of the child by Vliet with his grass edger, it should be made clear that there were no other obstructions to Fox’s view of the child. There were no parked automobiles in the immediate vicinity and although an investigating officer testified there was in the vicinity a tree whose trunk was eight inches in diameter the trial judge was not impressed with the testimony, and neither are we. At best it was vague, uncertain and unclear. The crucial evidence on the question of whether Fox should have seen Jeffrey before the accident so that he was charged with “the highest degree of care” in the operation of his automobile is that which concerns the relative position of Jeffrey and Vliet as they were talking just before Jeffrey darted into the street.
Vliet testified that they were close together in the driveway between the curb and sidewalk and that he was cutting grass along the edge running perpendicular to the street and closer to the oncoming Fox automobile. There is no evidence of the width of the driveway between the street and the sidewalk or as to how far from the street Jeffrey and Vliet were as Fox approached them. While Vliet was certain that Jeffrey was in the driveway he was not sure whether Jeffrey was behind him or on his side, or whether Jeffrey was closer to the street, the same distance from the street or closer to the sidewalk than Vliet was.
In weighing this evidence, we conclude that plaintiff failed to prove that Fox’s line of vision was unobstructed by the combination of Vliet, who was closer to Fox and larger than Jeffrey, and the grass edger.
Of major importance is the question of whether plaintiff has the burden of proof to bring himself within the ambit of the law, placing the high degree on the motorist who should have seen the child by proving that the motorist’s view of the child was unobstructed or does the defendant have the burden to prove that the child came from a concealed position, or that his vision was obstructed in order to exonerate himself from liability. The answer is the same as in any other civil damage claim, to wit, that plaintiff must prove each essential element of his case by a preponderance of the evidence in order to prevail. Since plaintiff failed to prove that Fox should have seen Jeffrey by a clear showing of his location near the side of the street and within Fox’s unobstructed view, plaintiff’s suit was properly dismissed.
But plaintiff, relying on Fox’s testimony to the effect that he saw the children to his left and that he did not change his speed or take extra precaution just before Jeffrey was struck, contends that once Fox saw the other children to his left he had the duty to exercise a high degree of care and had he done so the accident would not have occurred. But from the facts of the case we find no relationship between Jeffrey’s accident and the presence of the other children playing on the lawn across the street. Nor do we attach significance to the testimony that a toddler was playing a few feet from the street on the driveway directly opposite the one where Jeffrey was just before the accident. The presence of these children on the opposite side of the street had little if anything to do with the accident. Our concern is whether Fox breached any duty with respect to Jeffrey and not as regards the other children. Having concluded that plaintiff failed to prove that Fox should have seen Jeffrey his duty to avoid injury *342 to Jeffrey did not “become operative or exist in favor of the child.” Cappetta v. Jones, supra.
Accordingly, the judgment appealed from is affirmed.
Affirmed.